Betty HENRY, Plaintiff,

v.

Gordon FORBES, Retail Credit Company, a corporation, Burlington Northern Inc., a corporation, the Minnesota Transfer Railway Company, a corporation, the Saint Paul Union Depot Company, a corporation, and Minnesota Railroads Association, Defendants.

No. 4–74–Civ. 100.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 26, 1976.

Robert W. Rischmiller, Rischmiller & Wasche, Minneapolis, Minn., for plaintiff.

David C. Hutchinson, James H. Geraghty, Geraghty, O'Loughlin & Kenney, St. Paul, Minn., for Forbes.

Richard H. Kyle, Briggs & Morgan, St. Paul, Minn., for Burlington Northern Inc.

Scott K. Goldsmith, David F. Fitzgerald, Rider, Bennett, Egan, Johnson & Arundel, Minneapolis, Minn., for Minnesota Transfer Ry. Co. and St. Paul Union Depot Co.

Edward M. Glennon, Lindquist & Vennum, Minneapolis, Minn., for Minnesota Railroads Association.

Wright W. Brooks, Faegre & Benson, Minneapolis, Minn., for Retail Credit Co.

LARSON, District Judge.

This lawsuit was filed after plaintiff Betty Henry discovered that defendant Retail Credit Company had provided for its client Burlington Northern Inc. a report on plaintiff's personal background, employment and financial status. Plaintiff alleges that defendants' conduct has violated provisions of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t (1974), as well as State and Federal constitutional rights of privacy, and she requests actual damages of $1,000,000 and punitive damages of $1,000,000. Defendants Forbes, Burlington Northern, St. Paul Union Depot Company, Minnesota Transfer Railway Company, and Minnesota Railroads Association have moved for summary judgment as a matter of law, on grounds that the Fair Credit Reporting Act does not provide a remedy here because (a) the report was not a "consumer report" within the meaning of the Act, § 1681a(d), and therefore the provisions governing disclosure, etc., do not apply; (b) none of these defendants were "users" of the report so as to be liable under §§ 1681n and 1681o. Defendant Retail Credit moves for summary judgment on grounds that (a) it did not have the burden of informing plaintiff that a report had been requested; and (b) it properly performed the duties which the statute does prescribe for it. Because the Fair Credit Reporting Act is so narrowly drawn that it does not cover a situation such as the one presented here, the motions of all defendants must be granted.

The pertinent facts are not in dispute. Defendant Forbes is an attorney, a registered lobbyist at the State Legislature for the Minnesota Railroads Association, of which Burlington Northern is a member. He also is general counsel to the Minnesota

Transfer Railway Company and the St. Paul Union Depot Company, in which Burlington Northern owns a substantial interest. All of these interconnected companies, together with the Railroads Association, may be termed the "railroad defendants." They do not dispute Forbes' agency relationship with them.

Forbes routinely has used Burlington Northern's account with Retail Credit, an acknowledged "consumer reporting agency," to obtain reports on persons who submitted damage claims against the Minnesota Transfer Railway Company and the St. Paul Union Depot Company. On January 22, 1974, he called Burlington Northern and asked Robert Murphy to request a report on Betty Henry. No reason was given, and Murphy assumed that it was to be used in processing a damage claim. He so informed Retail Credit when requesting the report.

Plaintiff found out on January 24, 1974, that Retail Credit was investigating her when the investigator called her current employer, State Senator Charles Berg, while she was in the office. She contacted Retail Credit and on January 25, 1974, visited the local Retail Credit office and had the report read to her. The report was sent to Burlington Northern and remains in its files; Forbes and the other "railroad" defendants never saw it or used it.

Plaintiff had not been involved in any business transaction with any of the defendants. She was not employed by or an applicant for employment with any of them. Forbes has stated that the report was requested for an undetermined "use" in connection with his work as a lobbyist, and in her capacity as secretary/aide to two State legislators, plaintiff has been what the parties agree to term an "adversary" of Forbes and the interests he represents.

## I. *Liability of Forbes and the railroad defendants.*

As the complaint is drawn in this case, liability of defendants other than the consumer reporting agency must be predicated on § 1681d, which requires that anyone who "procure[s] or cause[s] to be prepared an investigative consumer report" must, unless the report is "to be used for employment purposes for which the consumer has not specifically applied," disclose to the consumer that the report has been requested.[1] Defendants do not dispute that plaintiff is a "consumer" and that the report was not procured for "employment purposes;"[2] therefore, if it is an investigative consumer report, they were required to disclose to plaintiff that it had been requested.

The statutory definition of "investigative consumer report" is derivative: it is any "consumer report" that is based at least in part on information gained through personal interviews with persons acquainted with the consumer. 15 U.S.C. § 1681a(e). Some of the information in the report at issue here was gained through personal interviews with plaintiff's neighbors, etc.; therefore, if the report is a "consumer report" at all, it is an "investigative" one within the provisions of § 1681d.

A "consumer report" is:

"any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation,

---

1. Defendants' motions must be based on the claims of statutory violations only. The Act provides that unless defendants have procured or used false information "with malice or wilful intent to injure" the plaintiff, an action under the statute must stand in lieu of any other action in the nature of invasion of privacy, negligence, or defamation. § 1681h(e). The statutory claims therefore are the only ones properly before the Court.

   Plaintiff has not alleged civil liability that might derive from the criminal penalties for obtaining consumer information from a consumer reporting agency under false pretenses, § 1681q. The questions of implied civil remedies and the coverage of that section are therefore not before the Court.

2. A "consumer" is "any individual." § 1681a(c).

   "Employment purposes" means use of a report "for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." § 1681a(h).

personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title." 15 U.S.C. § 1681a(d). The "other purposes authorized under § 1681b" that are relevant to this case are the provision of reports "to a person which [the credit reporting agency] has reason to believe . . .

* * * * * *

(B) intends to use the information for employment purposes;

* * * * * *

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer." § 1681b(3).

█ Defendants correctly assert that the report on plaintiff prepared by Retail Credit was not an "investigative consumer report" because, while it contained some of the information described by the statute, it was not prepared for any of the enumerated purposes. The primary definition, contained in § 1681a(d), indicates that a report is a "consumer report" only if it is prepared for one or more of the specific uses provided in § 1681a and § 1681b. The Federal Trade Commission, which is charged with enforcement and interpretation of the Act, § 1681s, has confirmed this view. "Compliance with the Fair Credit Reporting Act," 5 CCH Consumer Credit Guide ¶ 11,302 (1975).

Considerable discussion in the cases has centered on the question of whether § 1681b expands the § 1681a(d) definition of "consumer report" to include any information gathered for any of the purposes enumerated in § 1681b. *See, e.g., Beresh v.*

Retail Credit Co., Inc., 358 F.Supp. 260 (C.D.Cal.1973) (report is a "consumer report" because it was prepared to be used in connection with a business transaction involving the consumer, § 1681b(3)(E)); *Daniels v. Retail Credit Co.*, No. 73–CV–484 (N.D.N.Y. April 26, 1976) (report on plaintiff in litigation against architect and contractor who designed and built plaintiff's house, not a "consumer report" even though the dispute arose out of business transactions involving consumer); Note, *Judicial Construction of the Fair Credit Reporting Act: Scope and Civil Liability*, 76 Col.L. Rev. 458, 471 (1976) (suggesting that any conflict between § 1681a(d) and § 1681b should be resolved in favor of the "primary definitional section," § 1681a(d), and the definition should be expanded only if it does not conflict with § 1681a). Although the parties have argued this point exhaustively, the Court finds that resolution of the apparent conflict and circularity of the two sections is not necessary to the determination of the issue here. Even the broadest possible definition of "consumer report" under the Act would not cover the conduct in this case.

Gordon Forbes, along with the railroad defendants whose interests he represents as attorney and lobbyist, admittedly did not request the report on Betty Henry in order to determine her eligibility for personal credit or insurance within the meaning of the statute § 1681a(d). He also could not have gathered the information for "employment purposes" under either § 1681a(d) or § 1681b: no defendant had any intention of employing plaintiff, which is the context clearly implied by "eligibility for . . . (2) employment purposes," § 1681a(d), and because she was not currently employed by any of them, the remainder of the statutory definition ("promotion, reassignment, retention," § 1681a(h)), which would refer to § 1681b(3)(B), is inapplicable as well.[3]

---

3. Plaintiff has contended that "employment purposes" could refer to the circumstances of this case because Forbes admittedly requested the report to find out who employed plaintiff.

The Court finds this to be an unwarranted stretching of a single word beyond the context of the statute, its definitions and purposes.

The remaining "permissible purpose" that arguably could provide a definition of "consumer report" useful to plaintiff is § 1681b(3)(E), "legitimate business need for the information in connection with a business transaction involving the consumer." The few courts that have dealt with this provision have found that it refers only to those transactions in which there is a "consumer relationship" between the requesting party and the subject of the report, *Daniels, supra*; or in which the subject was seeking some benefit mentioned in the Act (credit, insurance, employment, licensing), *Ley v. Boron Oil Co., et al.* (W.D. Pa.1976). One court has stated that the Act is intended to cover only "commercial" transactions and no other form of "business." *Porter v. Talbot Perkins Children's Services*, 355 F.Supp. 174 (S.D.N.Y.1973). Plaintiff's "relationship" with defendants, such as it was, could be characterized as involving "business transactions" only in the sense that they held and conducted themselves according to well-known opposing political views concerning the operation of the railroad business. This hardly seems to be a "transaction" within the plain meaning of the statute. Moreover, given Forbes' limited statement of his reason for the request (to find out who employed plaintiff, a fact that might be a useful weapon to have in a political war), there is some question as to whether he could have had a "legitimate business need" for the information.

Plaintiff asserts that denial of a remedy under the Act, on the grounds that the report is not a "consumer report," is to obviate the legislative purpose of protecting individual privacy, § 1681. Defendants cite the speeches of the bill's sponsors to the effect that the only significant purpose of the Act is to protect persons who are denied credit, insurance, or employment through arbitrariness or inaccuracy on the part of the credit reporting agencies. The Court recognizes that the original purpose of the statute may have been broad, but like all statutes it is a product of legislative compromise[4] and as such is hardly a model of clarity in either purpose or effect. Unfortunately, despite the ambiguities, the Court cannot read into the statute provisions that do not exist, as did the court in *Belshaw v. Credit Bureau of Prescott*, 392 F.Supp. 1356 (D.Ariz.1975),[5] and cannot controvert the statements of the bill's House sponsor, Rep. Sullivan, to the effect that the real concern of Congress was protection of people whose privacy was unconscionably violated and who suffered from arbitrary treatment as a result of consumer transactions involving applications for credit, insurance, or employment.[6] The Fair Credit Reporting Act, in terms or in legislative intent, does not cover the procuring of information about persons not involved in consumer transactions.

If the purpose of the report is not among the enumerated purposes which define "consumer report," any person with

---

**4.** An account of the wrangling in Congress is contained in the footnotes in Note, *Judicial Interpretation of the Fair Credit Reporting Act, supra*, at 465–66.

**5.** In this case the Arizona District Court declared that the Act would be meaningless unless "consumer report" were "interpreted to mean any report made by a credit reporting agency of information *that could be used* [sic] for one of the purposes enumerated in § 1681a." *Belshaw, supra*, at 1359–60. This interpretation goes beyond the avowed interest of Congress, § 1681, in protecting consumer privacy; it would bring within the coverage of the Act any gathering of information about an individual, even if the context were such clearly non-consumer activities as engagement in profit-making transactions (*cf. Wrigley v. Dun & Bradstreet, Inc.*, 375 F.Supp. 969 (N.D.Ga.

1974), *aff'd* 500 F.2d 1183 (5th Cir. 1974)) or litigation against a defendant whose insurer requests a report (*cf. Daniels, supra*). While the Court believes that perhaps there should be some protection against the inevitable intrusions on privacy, in the general if not in the traditional legal sense, that occur during such investigations, the Fair Credit Reporting Act, as a product of political compromise enacted for the specific purpose of curbing only the worst abuses by the credit reporting industry and its clients, cannot be read as a broad congressional vindication of a right to absolute, inviolate personal privacy in every aspect of one's life.

**6.** *See Congressional Record* 36,572 (1970).

access to a reporting agency account may with any motive request personal and credit information about a private individual, cause an investigation to be made without the subject's knowledge, and act on the information—without giving the subject any of the protections against inaccuracy and misuse that are provided in the Act. If defendant Forbes had had an unsavory or illegal purpose in having plaintiff's background investigated, the information could not be part of a "consumer report"—and plaintiff would have had no remedy unless the information were used in violation of common law privacy rights (requiring highly public, outrageous conduct to make a cause of action) or in a criminal activity. Contrary to plaintiff's hopeful allegations, the Act clearly does not provide a remedy for all illicit or abusive use of information about consumers.

## II. *Liability of Retail Credit Company.*

Plaintiff has asserted the civil liability, §§ 1681n, 1681o, of defendant Retail Credit for failure to notify her that a report had been requested, failure to maintain reasonable procedures to ensure that requests were for lawful purposes, failure to ascertain that the report in question was to be used for a proper purpose, and failure to fully disclose to her the nature and scope of the investigation. The Court finds, upon examination of the undisputed facts, that all of these contentions are without merit, and *the motion of defendant Retail Credit for summary judgment accordingly is granted.*

■ None of the defendants can be found liable for violation of § 1681d, requiring consumer notification of a request for an investigative consumer report, because the report in question here is not a "consumer report," and therefore the section cannot apply. Moreover, even if a consumer report were involved here, the burden of notifying the consumer falls to the requesting party; the statute explicitly outlines in detail the duties of the reporting agencies to the consumer, and a duty prescribed simply for "a person" who procures or causes the report to be prepared, therefore must

indicate the responsibility of the requesting party only. *See Kekich v. Retail Credit Co.,* Civ. No. 73–539 (W.D.Pa. June 20, 1974).

Retail Credit also cannot be held to have violated § 1681e, requiring that credit reporting agencies maintain reasonable procedures to prevent gathering and use of obsolete information and to ensure that the reports are furnished only for statutorily authorized purposes, because both that section and § 1681c, which it incorporates by reference, limit reporting agency practices only to the extent that the information involved is a "consumer report."

Plaintiff is correct in her allegation that Retail Credit had a duty to disclose information to her when she requested that it do so. However, under § 1681g, the reporting agency need disclose to the subject consumer only "the nature and substance of all information . . . in its files on the consumer at the time of the request." When plaintiff requested disclosure, an agency employee read to her the entire report, which was the only information about her that the agency had. Plaintiff claims as well that the reporting agency had a duty to disclose to her the sources of the information. The statute allows the agency to refuse such disclosure concerning an "investigative consumer report" and does not refer to source disclosure in any other context. Because this case does not concern an investigative consumer report, the Court finds that § 1681g(2) does not apply, and the agency is under no particular duty to disclose or privilege against disclosure of sources. Plaintiff cannot invoke the statute to require such disclosure.

■ As in the case against the other defendants, the coverage of the Fair Credit Reporting Act is so narrow that action by a credit reporting agency generally is not within the ambit of the Act unless the information is gathered for use in a "consumer report." While Retail Credit's actions in this case could hardly be termed abusive, the Court does find that the agency may have been less than rigorous in determining its client's need for an ultimate use of the information it gathered. Ironi-

cally, the Court has no authority to find liability for such carelessness unless the purpose of the information gathering was one authorized by the Act. The circularity of this conclusion illustrates the primary "loophole" in the Act: individuals are not protected against abuse of the credit reporting apparatus unless their circumstances are within the narrow bounds of coverage under the Act.

IT IS ORDERED:

That the motions of all defendants for summary judgment be, and hereby are, granted.