Robert CONNELLY, Mark GUMMER, Fernand PAYEUR, William WILLEY, Daniel WEBER, Bernand FOSTER, and Allan EISENKRAFT
vs.
DUN & BRADSTREET, INC.

Civ. A. No. 79-2334-Z

United States District Court
D. Massachusetts

January 22, 1981

Gail Mahony & John A. Gilmore for plaintiff.
Gerald Rath for defendant.

## MEMORANDUM OF DECISION

ZOBEL, D.J. Plaintiffs are named one-time customers of Lloyd, Carr & Co., (hereinafter "Lloyd, Carr"), who contracted for the purchase of commodity options, and, in reliance upon those contracts remitted various sums of money to Lloyd, Carr. That corporation and its officers subsequently befell criminal prosecution for violations of the Commodity Futures Trading Commission Act of 1974, 5 U.S.C. § § 5108, 5314, et seq., and 7 U.S.C. § 82 et seq. and in addition, various fraud provision proceedings in bankruptcy. The bankruptcy proceedings are still underway. See, In re: Lloyd Carr & Co., 614 F.2d 17 (1st Cir. 1980). In this action plaintiffs move against Dun & Bradstreet, Inc., a Delaware Corporation engaged in the business of compiling credit information. Plaintiffs allege in short that Dun & Bradstreet knowingly assisted Lloyd, Carr in a scheme to defraud plaintiffs by supplying Lloyd, Carr with information about plaintiffs' resources, and that Dun & Bradstreet did so without plaintiffs' knowledge or authorization. They assert claims under the Commodity Exchange Act, 7 U.S.C. § 1 et seq., under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and under various provisions of the laws of the Commonwealth of Massachusetts. Defendant moves to dismiss all claims.

### Fair Credit Reporting Act:

This motion to dismiss Count I of the First Amended Complaint is predicated on the proposition that the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("the Act"), is not applicable to the facts of this case. Defendant contends that the lists of potential customers which it provided to Lloyd, Carr were not "consumer reports" within the meaning of the statute, that Dun & Bradstreet was not acting as a "consumer reporting agency" in furnishing those lists, and that the lists were not used or expected to be used for any of the purposes enumerated in the Act.

The legislative history of the Act demonstrates a clear Congressional intent to limit the scope of its coverage to situations involving individual consumers rather than commercial businesses:

The purpose of the Fair Credit Reporting Bill is to protect consumers from inaccurate or arbitrary information in a consumer report which is used as a factor in determining an individual's eligibility for credit, insurance or employment. It does not apply to reports used for business, commercial or professional purposes.

Congresswoman Leonore Sullivan, remarks on the report of the Senate-House Conference Committee, October 13, 1970, 91 Cong. Record, 36, 572.

To come within the regulatory scope of the Act, the customer lists at issue here, known as "Dun's Market Indicators" or DMI's, must first be "consumer reports". The statute defines a "consumer report" as

... any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title. 15 U.S.C. § 1681a.

The DMI's which are the subject of this litigation fall short of these definitional requirements in several respects. The undisputed facts in this case show that each DMI card provides certain information about one business organization, including its name, address, size, and the name of its chief executive officer. No personal information is included about the executive other than the fact of his connection to the subject business. While one might characterize as "personal" or "individual" information the mere juxtaposition on a single card of one person's name with information about his business, such a juxtaposition does not transform items of commercial information into a consumer credit rating. A commercial credit report which contains consumer credit information on a principal of the business being reported was found to be outside the scope of the Fair Credit Reporting Act in **Wrigley v. Dun & Bradstreet, Inc.**, 375 F.Supp. 969, 970 (N.D.Ga. 1974). Similarly, "it is clear that the statute regulates the reporting of credit matters involving individuals as consumers, and was not meant to cover business credit reports, pertaining to the business activities of the person reported on." **Ley v. Boron Oil**, 419 F.Supp. 1240, 1243 (W.D. Penna. 1976). Here, the information contained in the DMI, which was arguably not even "credit information about the subject business, certainly contained no credit information about the individual whose name appeared as the chief executive of the business.

In determining that the DMI's at issue in this case are not "credit reports" within the meaning of 15 U.S.C. § 1681a, I note that other courts considering similar questions have emphasized the fact that the coverage of the Fair Credit Report Act is extremely narrow, **Henry v. Forbes**, 433 F.Supp. 5, 10 (D.Minn. 1976) and that "the operation of the statute should be limited to those reports which fall within the manifest intent of the legislation," **Gardner v. Investigators, Inc.**, 413 F.Supp. 780, 782 (M.D. Fla. 1976). The general, commercial, non-credit oriented information in the DMI's is manifestly outside of the parameters envisioned by Congress in enacting 15 U.S.C. § 1681 et seq. Accordingly, Count I fails to state a claim for which relief can be granted, and defendant's motion for dismissal of Count I is allowed.

**Commodity Exchange Act:**

Defendant's motion to dismiss claims under the Commodity Exchange Act, 7 U.S.C. § 1 et seq. ("CEA"). Counts IV and V of the First Amended Complaint, rest solely on the argument that no private right of action exists under the CEA. However, the specific recent — and contrary —

authority of **Leist v. Simplot,** No. 79-7402 (2d Cir. 1980), in which the Court of Appeals for the Second Circuit echoes determinations of the three other Circuit Courts of Appeal which have addressed that issue, is conclusive. See, **Curran v. Merrill Lynch Pierce Fenner & Smith, Inc.,** CCH Comm. Fut. L. Rep. ¶ 21,030 (6th Cir. 1980); **Merrill Lynch, Pierce Fenner, & Smith, Inc. v. Goldman,** 593 F.2d 129, 133, n.7 (8th Cir. 1979); **Hirk v. Agri-Research Council, Inc.,** 561 F.2d 96 (7th Cir. 1977). In Leist, Slip Op. at 32-66, Judge Friendly analyzes the Act and its legislative history in comprehensive detail and considers the requisites for inferring the existence of a private cause of action as set forth in **Cort v. Ash,** 422 U.S. 66, 78 (1975). I find the above-cited authority and its reasoning to be a persuasive and essentially unchallenged determination that a private cause of action exists under the CEA. Accordingly, the motion to dismiss Counts IV and V is denied.

### State Law Counts:

Because plaintiff's five state law counts arise out of the same operative nucleus of facts as the claim under the Commodity Exchange Act, this court will retain pendent jurisdiction over those counts which state a claim under state law. **United Mine Workers of America v. Gibbs,** 383 U.S. 715 (1966).

Count II asserts claims under Mass. Gen. Laws c. 93, sec. 50 et seq., the Massachusetts Consumer Credit Reporting Act. The state statutory definitions of "consumer", "consumer report" and "consumer reporting agency", G.L. c. 93, sec. 50, mirror in all relevant respects the definitions in the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681a, which, as discussed above, do not include within their ambit the DMI's at issue in this case. Accordingly, defendant's motion to dismiss Count II of plaintiffs' complaint is granted.

Count III sets forth a common law claim in tort for aiding and abetting. While the Massachusetts courts have not explicitly recognized this tort, federal courts have explicitly acknowledged it in securities cases, relying on the Restatement of Torts § 876(b). See, e.g., **Epprecht v. Delaware Val. Machinery, Inc.,** 407 F.Supp. 315, 320 (E.D. Penna. 1976). Since the facts of this case may satisfy the requisites of that tort, defendant's motion to dismiss Count III is denied.

Count VI is a claim under G.L. c. 110A, sec. 101 et seq., the Massachusetts Uniform Securities Act, also known as the Blue Sky Law. Defendants attack the sufficiency of the allegations on the ground that the Act provides no private right of action, that Dun & Bradstreet was not one of the persons defined by the Act as subject to liability, and that the commodity futures sold by Lloyd, Carr were not "securities" within the meaning of the Act. Defendant's arguments and authority are persuasive, particularly its basic contention that commodities options are not "securities" which fall within the regulatory sweep of the Act. **Glazer v. National Commodity Research,** 388 F.Supp. 134 (N.D. Ill. 1974), aff'd., 547 F.2d 392 (7th Cir. 1977). Accordingly, defendant's motion to dismiss Count VI is granted.

In Count VII plaintiffs claim for negligence, asserting that Dun & Bradstreet breached a duty of care to plaintiffs by supplying Lloyd, Carr with customer lists when Dun & Bradstreet knew or should have known of Lloyd, Carr's fraudulent practices. These allegations are sufficient and the motion to dismiss Count VII is denied.

Massachusetts General Laws c. 93A, the Massachusetts Consumer Protection Act, serves as the basis of Count VIII. Defendants move to dismiss that claim on the ground that Dun & Bradstreet is an improper defendant, that the commodities options sold by Lloyd, Carr were not goods or services "primarily for personal, family, or household use," and that the actions complained of are exempt under Section 3(b) of the Act. While the language of c. 93A and the holding of **Dodd v. Commercial Insurance Co.,** 1977 Mass. Adv. Sh. 1540, 365 N.E.2d 802 (1977), impose a requirement of direct injury on the plaintiff, there is no corresponding statutory requirement that a 93A defendant be a "direct seller". The remaining arguments raise

questions of fact which cannot be resolved on a motion to dismiss. Accordingly, defendant's motion to dismiss Count VIII is denied.

In summary, the motion to dismiss is allowed with respect to Counts I, II and VI. It is denied as to the remaining Counts.

Zobel, D.J.<br>District Judge