Stephen BERMAN, Lucille Turecki,
Steve Miller, Inc., Plaintiffs,

v.

Vincent PARCO, Edward Greenberg,
Intercontinental Investigations,
Inc., Defendants.

No. 96 CIV. 375(KMW).

United States District Court,
S.D. New York.

Nov. 19, 1997.

Harry Kresky, New York, NY, for plaintiff Stephen Berman.

Morris D. Weintraub, New York, NY, for defendant Greenberg.

Edward Faranda, Laykind & Summers, Franklin Square, NY, for defendant Intercontinental and Parco.

## OPINION & ORDER

KIMBA M. WOOD, District Judge.

In a Report and Recommendation dated February 6, 1997 (the "Report"), Magistrate Judge Andrew J. Peck recommended that I: grant defendant Edward Greenberg ("Greenberg")'s motion for summary judgment pursuant to Fed.R.Civ.P. 56 on the Fair Credit Reporting Act claim; deny plaintiffs' motion to file a second amended complaint to assert a negligence claim against defendant Greenberg; dismiss plaintiffs' pendent state law invasion of privacy claim against defendant Greenberg without prejudice;[1] and deny defendant Vincent Parco ("Parco")'s motion for summary judgment.[2]

Plaintiff Lucille Turecki ("Turecki") filed objections to the Report on February 19, 1997.[3] Accordingly, I review the sections of the Report to which plaintiff Turecki objects *de novo* pursuant to 28 U.S.C. § 636(b).

Defendant Parco never objected to the Report. In conformity with *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989), the Magistrate Judge's Report explicitly cautioned that failure to file timely objections could constitute a waiver of those objections. I therefore accept and adopt the Magistrate Judge's recommendation with respect to Parco's motion for summary judgment. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (failure to file timely objections constitutes waiver of objections, and district court review not required).

### I. *Discussion*

Familiarity with the facts of this case, which are clearly laid out in both the Report and in an earlier opinion, *Berman v. Parco,* 96 Civ. 0375, 1996 WL 465749 (S.D.N.Y. Aug. 15, 1996), is assumed. In brief, this case arose in the aftermath of Turecki's contentious divorce from her ex-husband, Stanley Turecki. Turecki and Berman, Turecki's current husband, have sued Turecki's ex-husband's private investigator, Parco; Parco's company, International Investigations, Inc.; and Turecki's ex-husband's divorce attorney, Greenberg, for alleged violations the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). The basis of the complaint comes from a report written by Parco and dated June 15, 1995 (the "June 15 Report"), that contained credit profiles of Turecki and Berman. This report was faxed to defendant Greenberg after a conversation between Parco and Greenberg, and was intended for use in the arbitration proceedings between Turecki and her ex-husband surrounding their divorce.

In the sections of the Report to which plaintiff Turecki objects, Magistrate Judge Peck recommended that I find that although

1. Plaintiff Turecki did not object to Magistrate Judge Peck's recommendation that I dismiss the state law invasion of privacy claim against defendant Greenberg. Accordingly, I adopt this recommendation and hereby dismiss without prejudice plaintiff's state law invasion of privacy claim against defendant Greenberg.

2. I note that this motion, simultaneously called a motion for summary judgment and a motion to dismiss, was never filed with the clerk's office.

In fact, there is no official record of its existence. Nevertheless, it was carefully considered by Magistrate Judge Peck.

3. I note that plaintiff Steven Berman ("Berman") voluntarily dismissed his claim against Greenberg, and Steve Miller Inc, Berman's company, withdrew from this action. Accordingly, Berman continues to have a claim against defendant Parco.

there were material facts at issue regarding whether a settlement agreement released defendants from these claims and whether defendant Parco willfully violated the FCRA, because there was no evidence that defendant Greenberg acted willfully, I should grant Greenberg's motion for summary judgment on the FCRA claim. Additionally, Magistrate Judge Peck recommended that I deny plaintiffs' "eleventh hour" attempt to amend the complaint to assert a negligence claim against Greenberg.

Turecki has two main objections to Magistrate Judge Peck's Report. First, Turecki argues that Magistrate Judge Peck exceeded his authority in finding that Greenberg did not act willfully and recommending that I grant Greenberg's summary judgment motion. Second, she argues that it would be an abuse of this Court's discretion to deny her leave to amend her complaint to state a claim for negligent violation of the FCRA. I will discuss these objections in turn.

A. *Summary Judgment on Greenberg's Alleged Violation of FCRA §§ 1681n and 1681a*

█ The relevant sections of the FCRA[4] at issue in this case, prohibit the willful use of credit reports for improper purposes.[5] Specifically, Section 1681n provides that:

Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1) any actual damages sustained by the consumer as a result of the failure;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n. Section 1681q provides for criminal penalties:

[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than $5,000 or imprisoned not more than one year, or both.

15 U.S.C. § 1681q. Additionally, courts have found that a violation of Section 1681q can result in civil liability under Section 1681n. *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273 (9th Cir.1990); *Letscher v. Swiss Bank Corp.*, 94 Civ. 8277(LBS), 1997 WL 304895 at *3 (S.D.N.Y. June 5, 1997).[6]

█ In Section III of his report, after a thorough review of the caselaw, Magistrate Judge Peck recommended that I find that defendants Greenberg and Parco constitute "user[s] of information" within the meaning of the Section 1681n of the FCRA. I adopt this recommendation, which was not challenged by either Greenberg or Parco.[7]

---

**4.** I note that the FCRA has been amended, effective September 30, 1997, by the Consumer Credit Reporting Reform Act of 1996, Pub. Law 104-208, Div. A. Title II, §§ 2401 et seq. 110 Stat. 3009, 3009–446, 3009–454. Neither party has argued that the amendments would be relevant to this action.

**5.** Uses for improper purposes have been found to be those uses that are not specified in Section 1681b as permissible purposes. *See, e.g., Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir.1978). In particular, Section 1681b allows a consumer reporting agency to furnish a consumer report if it is ordered by a court with appropriate jurisdiction or if the consumer gives permission. In addition, an agency can issue a report if it believes that the information pertains to: a credit transaction, employment, an insurance claim, li-

censing eligibility, or a legitimate business need. Under Section 1681b, any request by Parco for a consumer report, if that is how he obtained the information contained in the June 15 Report, was improper and therefore obtained under false pretenses. *Id.* at 1219–20.

**6.** In an unpublished summary order, the Second Circuit Court of Appeals noted that although many circuits courts had found civil liability under Section 1681q, it declined to determine whether it would find such liability. *Advanced Conservation Systems, Inc. v. Long Island Lighting Co.*, 113 F.3d 1229, 1997 WL 280022 (2d Cir. May 23, 1997).

**7.** I note that this reading would be consistent with the amendments to the FCRA that have replaced the words "Any consumer reporting

However, Magistrate Judge Peck recommended that I grant defendant Greenberg summary judgment on the claim that he failed to comply with the requirements of the FCRA, because there was no evidence in the record that Greenberg acted willfully. Citing *Letscher v. Swiss Bank Corp.*, 94 Civ. 8277, 1996 WL 183019 at *7 (S.D.N.Y. April 16, 1996), Magistrate Judge Peck suggested that there was insufficient evidence presented that Greenberg had "[k]nowingly and intentionally committed an act in conscious disregard for the rights of others." Magistrate Judge Peck pointed out that the only evidence in the record pertaining to Greenberg and the June 15 Report was that: (1) Greenberg did not hire Parco; (2) Greenberg had no knowledge of how Parco obtained the information in the June 15 Report; (3) Greenberg did not directly or indirectly direct Parco's work on the June 15 Report; and (4) Greenberg had no substantive discussions with Parco.

Plaintiff argues that because Magistrate Judge Peck found that there was an issue of material fact as to whether Parco had willfully violated the FCRA, there must be an issue of material fact as to Greenberg as well, because he acted "in concert" with Parco. Additionally, plaintiff argues that because willfulness goes to the question of Greenberg's state of mind, it is not a proper issue to be decided on summary judgment. Finally, plaintiff argues that there was evidence to indicate that Greenberg acted willfully. I find these arguments to be without merit.

 The willfulness requirement of Section 1681n is synonymous with the requirement of intent in criminal statutes. *See Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir.1986) ("there is no evidence that [the defendants] knowingly and intentionally committed an act in conscious disregard for the rights of others."). Furthermore, because willful conduct allows successful plaintiffs to collect punitive damages, this requirement has been strictly applied in FCRA cases. *See, e.g., Cushman v. Trans Union Corp.,* 115 F.3d 220, 226–27 (3rd Cir.1997) (reviewing willful requirement of Section 1681n and holding that "to justify an award of punitive damages, a defendant's actions must be on the same order as willful concealments or misrepresentations").

 Plaintiff's argument that because Greenberg worked in concert with Parco, the Court need not find that Greenberg's conduct was willful is contrary to caselaw.[8] I note that in cases in which two or more defendants have allegedly breached Section 1681n, courts have found that plaintiffs must present evidence that each of the defendants acted willfully in order to sustain a claim against each of them. *See, e.g., Yohay v. City of Alexandria Employees Credit Union Inc.,* 827 F.2d 967, 972 (4th Cir.1987) ("each of the two users—the Credit Union and Ryan—is subject to civil liability under section 1681n if each user's individual non-compliance with section 1681b was willful."); *accord Boothe v. TRW Credit Data,* 557 F.Supp. 66, 71 (S.D.N.Y.1982). Even if plaintiff could prove that defendants were working in concert (and at this point she has failed to provide evidence of this allegation), plaintiff still most offer evidence that all defendants willfully violated the FCRA. *Cf. Daley v. Haddonfield Lumber Inc.,* 943 F.Supp. 464, 468 (D.N.J.1996) ("defendants admit that [person who requested credit report who was a club member] in fact sought and obtained the report at the request and for the benefit of [his co-defendant club] and that that report was filed in the [club]'s manager's of-

agency or user of information which" with "Any person who". There can be no argument that both Parco and Greenberg would fit into this definition.

**8.** The two cases cited by plaintiff for this proposition are neither particularly relevant nor supportive of plaintiff's position. *See, Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 280–81 (2d Cir.1992) and *S & K Sales Co. v. Nike,* 816 F.2d 843, 847–48 (2d Cir.1987). In both cases, the Second Circuit Court of Appeals found

that non-fiduciaries could be liable for a breach of fiduciary duty by co-defendants only if they were "knowing participants" in the fiduciary's breach. *Diduck,* 974 F.2d at 280–81; *S & K Sales Co.,* 816 F.2d at 847–48. These cases specifically discuss the tort of "participation in a fiduciary's breach" which is not an intentional tort. *See, e.g., S & K Sales,* 816 F.2d at 847. Even if these cases were applicable to this case, there has been no evidence presented that Greenberg was a "knowing participant" in Parco's breach.

fice."). Furthermore, because no evidence has been offered that Parco was working for Greenberg, a willfulness finding could not be based on any agency principle. *Auriemma v. City of Chicago*, 86 Civ. 9260, 1990 WL 36774 at *3 (N.D.Ill. March 2, 1990) (granting summary judgment to defendants where plaintiff had failed to prove that official with authority either personally obtained credit reports or authorized an agent to obtain credit reports in violation of FCRA); *cf. Millstone v. O'Hanlon Reports, Inc.*, 383 F.Supp. 269 (E.D.Mo.1974) (finding defendant liable where agent included false information in credit report). Finally, even if Greenberg had requested the credit report from Parco, the FCRA, "does not, by its plain terms, place any duty upon persons to refrain from requesting consumer reports from individuals for purposes not authorized by the FCRA." *Ippolito v. WNS, Inc.*, 864 F.2d 440, 448 (7th Cir.1988). Accordingly, plaintiff's argument that I need not find that Greenberg acted willfully because he was working in concert with Parco is without merit.[9]

■ Plaintiff's second argument, that a finding of willfulness is inappropriate for a summary judgment motion, also lacks merit. Courts in this circuit and in other circuits have routinely granted summary judgment in FCRA cases against plaintiffs who have failed to offer any evidence of willful conduct. *See, e.g., Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir.1995); *Philbin v. Trans. Union Corp.*, 101 F.3d 957, 970 (3rd Cir.1996); *Bloom v. I.C. System, Inc.*, 972 F.2d 1067 (9th Cir.1992); *Letscher*, 1997 WL 304895 at *3–4.

■ Finally, plaintiff's argument that there is enough evidence to find that Green-

berg acted willfully is also without merit. All the evidence presented in support of and against this motion indicates that Greenberg had no part in acquiring the credit report and had no knowledge of how Parco obtained it. Simple hope that a jury will not believe the testimony of defendants that has been submitted in support of a summary judgment motion will not defeat the motion where there has been no affirmative evidence submitted to counter the defendants' evidence. *See, e.g., Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 109 (2d Cir.1997) (" '[i]f all of the witnesses deny that an event essential to the plaintiff's case occurred, the plaintiff cannot get to the jury simply because the jury might disbelieve these denials. There must be some affirmative evidence that the event occurred.' ") (citations omitted).

Accordingly, I adopt Magistrate Judge Peck's recommendation that I grant defendant Greenberg summary judgment on the FCRA claim because there has been no evidence presented that Greenberg willfully failed to comply with the FCRA.

B. *Plaintiffs' Motion to Amend the Complaint*

■ Plaintiffs attempted to amend their complaint in September 1996. Specifically, they wanted to add a claim against Greenberg for negligent noncompliance with the FCRA pursuant to Section 1681o in light of their probable difficulty of proving willful conduct. Section 1681o allows actual damages and reasonable attorney's fees for "any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer." 15 U.S.C. § 1681o.

---

9. Plaintiff's best support for their proposition comes from the New York State case of *Klapper v. Shapiro*, 154 Misc.2d 459, 586 N.Y.S.2d 846 (Sup.Ct.N.Y.Co.1992). In *Klapper*, a New York County Supreme Court denied summary judgment to an attorney who had used an improperly obtained credit report in a Surrogate Court action. *Id.*, 586 N.Y.S.2d at 850–51. The court found that despite the attorney's protestations that he had no role in obtaining the credit report, his use of the report in an alleged attempt to impugn plaintiff's credibility allowed him to be considered a "user" of the credit report within

both the FCRA and New York's comparable statute. *Id.* at 851. However, although the court in *Klapper* relied on federal caselaw, the cases on which it relied did not support its position that a plaintiff need not prove that a user of a credit report willfully violated the FCRA. *See, e.g., Hansen v. Morgan*, 582 F.2d 1214, (9th Cir.1978) (holding that for purposes of Section 1681n, plaintiff need show that defendants have willfully failed to comply with any "requirement" imposed by the FCRA on users of credit information). Accordingly, I do not find *Klapper* persuasive.

The Federal Rules of Civil Procedure provide that leave to amend "shall be freely given," Fed.R.Civ.P. 15(a), and, as the Supreme Court has held, "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, there are valid reasons for denying a plaintiff leave to amend; they include: undue delay, bad faith, or the futility of the amendment. *Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 251 (2d Cir.1994) (citing *Foman*, 371 U.S. at 182, 83 S.Ct. at 230).

Magistrate Judge Peck recommended that I deny plaintiffs leave to amend their complaint. He found that plaintiffs had delayed unduly, and that an amendment at this late date and at the close of discovery would prejudice defendant Greenberg, who had been conducting discovery based on a willfulness claim as opposed to a negligence claim. Additionally, he found that plaintiffs failed to offer an adequate explanation for why they had missed the deadline for amending pleadings by more than two months, especially when they should have known to bring a negligence claim as soon as defendant Greenberg answered the complaint and alleged that he never hired Parco.

Plaintiffs argue that the reason they waited so long to request leave to amend their amended complaint was because defendant Greenberg was delinquent in responding to discovery requests. They point out that they requested leave to amend their complaint on the same day that they finished deposing Greenberg and learned additional facts about his relationship with Parco. Plaintiffs also point out that at a conference on September 13, 1996, when plaintiffs requested leave to move to amend their complaint to add the negligence claim, defendant failed to identify any way in which he would be prejudiced by the addition of this claim when questioned by Magistrate Judge Peck. (Tr. Conf. before Mag. J. Peck.)

Although I am sympathetic to plaintiffs' complaints regarding defendant Greenberg's delinquence in responding to discovery requests, I concur with Magistrate Judge Peck's recommended findings that defendant Greenberg would be prejudiced by the addition of this claim, and that plaintiffs should have added this claim as soon as they received their answer, if not before. As Magistrate Judge Peck points out, it is common for plaintiffs to allege alternative intent requirement claims at the commencement of a case. *See, e.g., Letscher*, 1996 WL 183019 at *6–7 (*pro se* plaintiff alleged both willful and negligent violations of FCRA).

Additionally, I am denying plaintiffs' motion to amend because it would be futile. Initially, I note that under Section 1681*o*, plaintiffs can recover actual damages and attorney's fees only. Plaintiffs have not indicated that they have suffered any actual damages from Greenberg's use of the credit report. More importantly, I find that Section 1681*o*, unlike Section 1681n, does not provide for civil liability under Section 1681q because Section 1681q requires willful conduct and Section 1681*o* requires negligent conduct only. *See, Ippolito*, 864 F.2d at 448 ("we have serious doubts as to whether merely negligently requesting a consumer report violates the FCRA ... the statute does not ... appear to impose any liability upon a person merely for 'negligently causing' a consumer report to be prepared for an impermissible purpose"); *Kennedy v. Border City Savings and Loan Ass'n*, 747 F.2d 367, 368 (6th Cir.1984) ("Since violation of Section 1681q occurs only when an individual acts knowingly and willfully, Section 1681n rather than 1681*o* is the proper vehicle for civil liability violations of 1681q"); *Letscher*, 1996 WL 183019 at *6 (finding it would be a "logical impossibility" for one to be able to "negligently violate a provision requiring willful conduct"). Accordingly, plaintiff would not be able to recover damages on the theory that Greenberg negligently used information which was obtained for an improper purpose, or that "Greenberg was negligent in failing to acquaint himself with Parco's activities and ensure that he acted within the law," which is plaintiffs' stated goal in serving a second amended complaint. (Kresky Decl. in support of Mot. to Amend Am. Compl. ¶¶ 16, 17.)

Accordingly, I am denying plaintiffs leave to amend their amended complaint.

## II. *Conclusion*

For the reasons stated above, I hereby grant defendant Greenberg's motion for summary judgment, deny defendant Parco's motion for summary judgment, deny plaintiffs' motion for leave to amend their complaint, and dismiss the state law invasion of privacy claim against defendant Greenberg. The parties should submit a joint pre-trial order on December 1, 1997, and will be marked ready for trial December 2, 1997.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge:

To the Honorable Kimba M. Wood, United States District Judge:

This action, which is the aftermath of a prior matrimonial action, is being litigated with the emotionalism and disregard of economics typical, unfortunately, of many matrimonial actions. The ex-wife, plaintiff Lucille Turecki, and her current husband, Stephen Berman, have sued the ex-husband's divorce attorney, defendant Edward Greenberg, and the ex-husband's private investigator, defendants Vincent Parco and his company, defendant International Investigations, Inc. (collectively, "Parco"), for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

Defendants have moved for summary judgment, alleging, *inter alia*, that (1) the Fair Credit Reporting Act is not applicable to them and (2) a settlement agreement between plaintiffs and Dr. Turecki released plaintiffs' claims against defendants.

For the reasons set forth below, the Court finds that the release is unclear, parol evidence thus can be considered, and that there are genuine issues of material fact about whether the Settlement Agreement released defendants. Thus, I recommend that the Court deny summary judgment on the release issue. As to the Fair Credit Reporting Act, there are issues of fact as to whether defendant Parco obtained "consumer report" information from a "consumer reporting

agency" and thus summary judgment should be denied as to Parco. Summary judgment on the Fair Credit Reporting Act claim should be granted as to defendant Greenberg, because there is no evidence that he acted willfully. I further recommend that the Court deny plaintiffs' eleventh hour attempt to amend the complaint (yet again) to assert a negligence claim against defendant Greenberg. Finally, I recommend that the Court decline to exercise pendent jurisdiction over plaintiffs' state law invasion of privacy claim against defendant Greenberg.

## *FACTS*

The allegations of the complaint and certain of defendants' defenses are summarized in the Court's prior decision in this matter, familiarity with which is assumed. *Berman v. Parco*, 96 Civ. 0375, 1996 WL 465749 (S.D.N.Y. Aug.15, 1996).

### *The Divorce Arbitration Proceeding*

Defendant Greenberg began representing Dr. Turecki in February 1994 in connection with divorce support proceedings. (Greenberg 3(g) ¶ 1; Plfs. 3(g); Greenberg Dep. at 15–16.) On July 15, 1994, Greenberg filed a Demand for Arbitration on behalf of Dr. Turecki against Lucille Turecki to reduce Dr. Turecki's support obligations, on the ground that Lucille Turecki and Berman allegedly were cohabiting and that Lucille Turecki had income from a tax-free municipal bond fund. (Greenberg 3(g) ¶¶ 3–5; Plfs. 3(g); Greenberg 9/30/96 Dec. ¶ 2; Greenberg Dep. at 35–37, 119–20; Lucille Turecki 10/16/96 Dec. ¶ 8; Berman 8/2/96 Dec. ¶ 3.) While Berman was not a party to the arbitration, he was a witness. (Greenberg 3(g) ¶ 9; Plfs. 3(g); Berman Dep. at 7.)

Defendant Greenberg listed defendant Parco as a witness on Dr. Turecki's arbitration witness list. (*See, e.g.,* Berman Dep. at 7; Greenberg Dep. at 66–67.) Greenberg did not retain Parco's services; Parco was retained directly by Dr. Turecki. (Greenberg Dep. at 60, 135; Parco Dep. at 138, 143, 149–50; Greenberg 3(g) ¶¶ 34–36.) [1]

---

**1.** While plaintiffs' 3(g) claims that this fact is in dispute, plaintiffs have not presented any *evi-* *dence* to dispute this testimony of defendants Greenberg and Parco. *See* Fact section entitled

During the arbitration, the parties exchanged intended exhibits, including Parco's reports, and thus Lucille Turecki "learned that Dr. Turecki and his attorney Edward Greenberg intended to attempt to prove their case through a detailed report on [her] finances and those of Mr. Berman provided to Mr. Greenberg by the infamous Vincent Parco." (Lucille Turecki 10/16/96 Dec. ¶ 12; Berman 8/2/96 Dec. ¶ 5; Berman Dep. at 7.) Berman became "outraged by this intrusion" into his and Lucille Turecki's personal affairs. (Berman 8/2/96 Dec. ¶ 6.)

On June 21, 1995, Berman wrote Greenberg that he intended to file complaints against Greenberg with various agencies including the bar Grievance Committee. (Greenberg 3(g) ¶ 10 & Ex. C; Plfs. 3(g).) Because of that letter, the arbitrator adjourned the arbitration at Greenberg's request. (Greenberg Dep. at 95–102; Greenberg 3(g) ¶ 11; Greenberg 9/30/96 Dec. Ex. B; Plfs. 3(g).) Greenberg retained his current counsel, Morris D. Weintraub, to represent him in any matter involving Berman. (Weintraub Dep. at 6–7; Greenberg Dep. at 165–67.) "Shortly after being retained as counsel, Weintraub wrote a letter to Berman, requesting copies of any letters Berman had written to banks, other financial institutions or anyone else accusing Parco of illegally investigating plaintiffs that mentioned Greenberg by name. A few days later, Weintraub received a telephone call from Berman to discuss Weintraub's letter." *Berman v. Parco*, 1996 WL 465749 at *2 (record citations omitted). The Berman–Weintraub telephone call is discussed in the Court's prior opinion. *Id.* at *2–3. As a result of that conversation, Berman wrote to Greenberg, acknowledging that Parco and not Greenberg was responsible and releasing Greenberg from liability. (Greenberg 3(g) ¶ 12 & Ex. D; Plfs. 3(g).) Berman's July 26, 1995 letter stated:

Dear Mr. Greenberg:

After having discussed the matter of Vincent Parco with Donald Frank [Lucille Turecki's counsel in the arbitration], I am convinced that you were not involved in or in any way responsible for Parco's actions in accessing my bank account's or American Express's records.

. . . .

*You can consider this letter as an unconditional release* as I have no intention of charging you or your client with any illegal act, or to begin any civil legal proceeding in this matter.

(Greenberg 3(g) Ex. D.)

The Court previously rejected plaintiffs' argument that this letter was written under legal duress. *Berman v. Parco*, 1996 WL 465749 at *2–3, *6–9 & nn. 3–4. As a result, Berman voluntarily dismissed his claim against Greenberg, and Berman's company (Steve Miller Inc.) was dropped totally as a plaintiff. (*See also* Kresky 9/26/96 Dec. ¶ 19.) Lucille Turecki's claim against Greenberg, and both plaintiffs' claims against Parco, are the subject of this motion.

By stipulation dated September 28, 1995, the arbitration was discontinued with prejudice. (Greenberg 3(g) ¶ 16; Plfs. 3(g); Greenberg Dep. at 19, 103–07, 111–12.)

### The 1996 Settlement Agreement and Release

Lucille Turecki and Berman signed a Settlement Agreement with Dr. Turecki on or about January 11, 1996. (Greenberg 3(g) ¶ 18; Plfs. 3(g); Janice Weintraub 9/30/96 Aff. Ex. E; Berman Dep. at 83–84.)[2] In order to "seek to end all contact between them except as absolutely necessary in the case of emergencies or other unavoidable circumstances and to avoid any future interference in each other's lives through legal actions . . .," Dr. Turecki paid Lucille Turecki $450,000 to settle all of his obligations under their Separation Agreement. (Janice Weintraub 9/30/96 Aff. Ex. E, Wherefore clause & ¶ 3.)[3] The Settlement Agreement

"The Parco–Greenberg–Dr. Turecki Relationship," below.

2. The Settlement Agreement provided that it is governed by New York law. (Janice Weintraub 9/30/96 Aff. Ex. E, ¶ 24.)

3. According to Berman, $50,000 of the $450,000 that Dr. Turecki paid to Lucille Berman was "for the specific purpose of preventing her and me from suing him on the same grounds as are being asserted in this litigation against Greenberg and Parco." (Berman 8/2/96 Dec. ¶ 10.)

further provided a release from plaintiffs to Dr. Turecki, his agents and attorneys:

9. For good and valuable consideration, receipt of which is hereby acknowledged, *Ms. Turecki and Mr. Berman hereby release and discharge Dr. Turecki and* Susan Turecki, and their heirs, executors, administrators, successors, *agents, attorneys,*[4] representatives and assigns, from any and all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extent, executions, claims, and demands whatsoever, in law, admiralty or equity, which against Dr. Turecki and/or Susan Turecki, or their heirs, executors, administrators, successors, agents, attorneys, representatives and assigns, Ms. Turecki and/or Mr. Berman, their heirs, executors, administrators, successors, agents, attorneys, representatives and assigns ever had, now have, or hereafter can, shall or may have, from the beginning of the world to the date of this Agreement for, upon, or by reason of any matter, cause or thing whatsoever.

(*Id.* ¶ 9, emphasis added.) The Settlement Agreement refers, however, to the possibility of litigation against "third parties" that might involve Dr. Turecki:

16. The parties [defined in the Settlement Agreement as Berman, Lucille Turecki and Dr. Turecki] agree that they will not subpoena, depose, call as a witness, investigate or otherwise involve any other party or Susan Turecki in any litigation, arbitration, action or other proceeding with any third party (hereinafter referred to as "Third Party Litigation") arising out of any conduct, claim, information, litigation or other event occurring prior to the Closing Date. The parties further agree that any reference to any other party in a pleading or court submission in a Third Party Litigation shall be limited to such references as are reasonably necessary to

permit the prosecution of such Third Party Litigation . . . .

(*Id.* ¶ 16.)

Berman negotiated the Settlement Agreement on behalf of himself and Lucille Turecki. (*E.g.,* Berman 10/16/96 Dec. ¶ 13.) Berman claims that he made clear to Dr. Turecki's attorney who negotiated the settlement, Edward Rosenthal, that Berman and Lucille Turecki intended to sue Greenberg and Parco after execution of the Settlement Agreement. (Berman 10/16/96 Dec. ¶¶ 11–21; Lucille Turecki 10/16/96 Dec. ¶¶ 25–26.) Thus, Berman declared:

11. After Greenberg walked out of the arbitration, I received a letter dated August 11, 1995 from Edward Rosenthal who was representing Dr. Turecki in two lawsuits commenced by Lucille and me for damages caused by our false arrest. Rosenthal indicated that Dr. Turecki was interested in pursuing negotiations with Lucille and me which would resolve all of the disputes between us . . . .

14. Edward Rosenthal and I had numerous conversations and exchanged a great deal of correspondence in the months to come, until a final settlement was signed on January 11, 1996. *I made it clear to Rosenthal throughout these discussions that it was Lucille's and my intent to sue Greenberg and Parco for their invasion of our privacy.* Rosenthal, in turn, made clear that his only concern was protecting Dr. Turecki.

15. He told me specifically that paragraph 9 of the settlement was for the protection of the attorneys involved in the negotiations, Kresky, Frank and himself as well as Dr. Turecki, Susan Turecki and their employees.

16. Several of my conversations with Rosenthal were taped. I annexed hereto excerpts of the tapes which confirm the above. In fact, in our conversation of December 18, 1995 I suggested that Rosenthal could call Greenberg and Parco, and if

---

4. The parties dispute whether the reference to "attorneys" was meant to include only present counsel for Dr. Turecki and if so, whether defendant Greenberg was still acting as an attorney for Dr. Turecki at the time of the Settlement Agreement. (*Compare, e.g.,* Greenberg 3(g) ¶ 17; Greenberg Dep. at 19–20, 169, 171; Morris Weintraub 11/7/96 Decl. Exs. A–B; *with* Plfs. 3(g) ¶ 24; Plfs. Sur–Reply Br. at 1–8; Berman 10/16/96 Dec. ¶ 20.)

they kicked in $50,000 or $100,000, Lucille and I would not sue them. Mr. Rosenthal did not report back to me on this. I do not believe Rosenthal ever spoke to Greenberg or Parco.

17. Indeed, much of the negotiations was consumed with the question of how to protect Dr. Turecki from involvement in the litigation Lucille and I intended to pursue against Greenberg and Parco. . . .

18. The "Third Party Litigation" contemplated [in ¶ 16 of the Settlement Agreement] was, of course, this very lawsuit.

(Berman 10/16/96 Dec. ¶¶ 11–18, emphasis added; *see also id.* Ex. L.)

### The Parco–Dr. Turecki–Greenberg Relationship

Plaintiffs' Fair Credit Reporting Act claim is based on a June 15, 1995 letter from defendant Parco to defendant Greenberg. (Lucille Turecki 10/16/96 Dec. ¶ 12 & Ex. B.) Lucille Turecki and Berman base their conclusion that Parco had improperly accessed their credit information on that June 15, 1995 Parco letter. (Lucille Turecki 7/9/96 Dep. at 11, 25, 28; Berman Dep. at 127; Greenberg 3(g) ¶¶ 25–29.) Prior to having seen the June 15, 1995 letter, Lucille Turecki had no information that Parco had made any illegal access to her personal credit information. (Turecki 7/9/96 Dep. at 11.)

The June 15 letter provides detailed billing information for December 1994–May 1995 on Berman's and Lucille Turecki's American Express cards. (*Id.* Ex. B at pp. 1–4.) The letter further stated that "[u]tilizing a proper pretext," Parco contacted a certain hotel which appeared on Berman's American Express bill to determine when (and with whom) Berman stayed at the hotel. (*Id.* at pp. 3, 4, 8.)

The balance of Parco's letter repeated information that was previously "reported in February 1993" (*id.* at p. 5), including detailed listings (by bank, account number and type) of banking information about Berman and Lucille Turecki, as well as similar detailed information about their brokerage account. (*Id.* at pp. 5–8.) That portion of

Parco's letter also contained the following statements:

*ASSIGNMENT:*

Perform a background investigation of the subject and Steve Miller a/k/a Steve Berman.

*CREDIT INFORMATION:*

Credit profiles and Social Security Number Traces were requested for both Lucille Turecki and Steve Berman. These searches generally indicate spouses, co-owners and any co-makers of loans or joint accounts. As you can see, Lucille Turecki and Steve Berman are listed separately.

\* \* \* \* \* \*

*INCOME SEARCH:*

We are awaiting the income search which is being conducted by a confidential source. Upon receipt of this information, it will be forwarded to you under a separate cover. As events warrant we will be in future communication.

(*Id.* at 5, 9.)

Parco testified that some of the account information was given to him by Dr. Turecki. (*E.g.,* Parco Dep. at 10, 18–19.) Lucille Turecki, however, testified that she had not provided the account information in Parco's June 15, 1995 letter to Dr. Turecki. (Lucille Turecki 7/9/96 Dep. at 18, 20, 25; *see also* Berman 10/16/96 Dec. ¶¶ 2–4.) Parco also testified that he got additional information from restaurants and stores using "the proper pretext." (*E.g.,* Parco Dep. at 11–16.) According to Parco, as long as his investigators "do not say they are a government agent or clergyman, they can use any pretext to get verbal information." (Parco Dep. at 14, 49.) Pretext could involve "bending" but not breaking the law. (Parco Dep. at 72–74.) In Parco's view, "proper pretext" to obtain information about bank accounts could include pretending to be Berman or Lucille Turecki and calling their banks. (*E.g.,* Parco Dep. at 43–44.) Parco agreed that this was "bending the law." (Parco Dep. at 75.) According to Parco, neither he nor his agents obtained information about Lucille Turecki or Berman from TRW, Transunion or similar credit reporting companies. (Parco Dep. at 47–48, 98–99, 150.) Parco, however, was unable to

provide specific details as to how his agency obtained the information about Berman and Lucille Turecki contained in his June 15, 1995 letter. (*See generally* Parco Dep.; *see, e.g.,* Parco Dep. at 22–24.)

Greenberg had no knowledge of what Parco did to obtain the information in Parco's June 15, 1995 letter. (Greenberg Dep. at 151–52.)

Neither Lucille Turecki's nor Berman's credit standing has been injured in any way as a result of Parco's alleged improper access to their personal credit history. (Greenberg 3(g) ¶¶ 30–33; Plfs. 3(g); Lucille Turecki 7/9/96 Dep. at 29; Lucille Turecki 8/27/96 Dep. at 19–31; Berman Dep. at 129.) Lucille Turecki has not applied for any credit since then. (*Id.*) Her only out-of-pocket financial loss, therefore, was the attorney fees in the marital arbitration. (Lucille Turecki 7/9/96 Dep. at 29; Lucille Turecki 10/16/96 Dec. ¶ 27.)

Lucille Turecki's only information that Greenberg retained Parco's services is the June 15, 1995 letter itself. (Lucille Turecki 7/9/96 Dep. at 79–80; Lucille Turecki 8/27/96 Dep. at 22–23; *see* Greenberg 3(g) ¶¶ 27–28; Berman Dep. at 127.) "[P]laintiffs contend that Greenberg's role in illegally accessing confidential information concerning plaintiffs can be established circumstantially." (Kresky 10/16/96 Dec. ¶ 3.)

Both Parco and Greenberg unequivocally testified that Parco's client was Dr. Turecki and that Greenberg was never Parco's client. (*E.g.,* Greenberg 3(g) ¶¶ 34–36; Greenberg Dep. at 60; Parco Dep. at 138, 150.) Greenberg unequivocally testified as follows:

Q. When did you retain the services of Mr. Vincent Parco?

A. I never retained the services of Vincent Parco.

Q. Did you retain the services of Intercontinental Investigations, Inc. [Parco's firm]?

A. No, sir.

(Greenberg Dep. at 60.) Parco confirmed that his client was Dr. Turecki, and not Greenberg. (Parco Dep. at 87, 138, 147–48, 150.)

Greenberg testified that he had only a single conversation with Parco, in a telephone call on June 8, 1995. (Greenberg Dep. at 62, 81–83, 87.) In that telephone conversation, Parco said he was sending Greenberg a "partial report" at Dr. Turecki's request and asked for Greenberg's fax number. (Greenberg Dep. at 62–63, 81–83.) Parco thereafter faxed the June 15, 1995 letter. (Greenberg Dep. at 63.) Greenberg testified:

I did not retain Mr. Parco. I did not direct Mr. Parco. I didn't conspire with Mr. Parco. I did nothing with Mr. Parco, other than to receive a fax that was sent to me and have a telephone conversation with him letting him know what my fax number was.

(Greenberg Dep. at 135.)

While Parco believed Greenberg requested the letter for use in the arbitration, Parco confirmed that Greenberg had nothing to do with Parco's June 15, 1995 letter, and that Greenberg did not directly or indirectly direct Parco's work or his report. (Parco Dep. 9, 80, 136, 139–40, 142–43, 150.)

Lucille Turecki and Berman have no knowledge of defendant Greenberg using or disseminating any financial information about her to anyone except in connection with the arbitration. (Lucille Turecki 8/27/96 Dep. at 23; Greenberg 3(g) ¶¶ 27–28; Plfs. 3(g); Berman Dep. at 127, 129.) Greenberg confirmed that he did not disseminate the contents of Parco's June 15, 1995 letter to anyone except Lucille Turecki's counsel in the arbitration and the arbitrator. (Greenberg Dep. at 91, 139–42.) Parco only provided the letter to Greenberg and Dr. Turecki. (Parco Dep. at 137, 149; *see* Greenberg 3(g) ¶¶ 27, 30–33; Plfs. 3(g).)

### Plaintiffs' Motion to Amend the Complaint

In addition to the summary judgment motions, presently before the Court is plaintiffs' motion for leave to file a second amended complaint to assert a claim by Lucille Turecki against defendant Greenberg for negligent failure to comply with the requirements of the Fair Credit Reporting Act.

The present complaint asserts a claim against defendants Greenberg and Parco for

willful violation of 15 U.S.C. §§ 1681n and 1681q. (Amend.Cplt.¶ 21.)

The proposed Second Amended Complaint continues to assert a claim for willful violation against defendants Greenberg and Parco. (2d Amend.Cplt.¶ 20.) [5] It also seeks to assert a claim by Lucille Turecki against defendant Greenberg for negligent failure to comply with the Fair Credit Reporting Act pursuant to 15 U.S.C. § 1681o. (2d Amend. Cplt.¶¶ 23–26.) The proposed new complaint explains:

> 24. Even if, as defendant Greenberg maintains, Stanley Turecki alone retained the services of defendants Parco and Intercontinental to obtain personal and confidential financial and other information pertaining to plaintiffs, defendant Greenberg, as an attorney, was negligent in failing to properly supervise the activities of defendants Parco and Intercontinental to ensure that they acted legally in obtaining information used by defendant Greenberg in prosecuting said arbitration.

(*Id.* ¶ 24.)

Plaintiffs contend that they discovered the need to seek leave to file this negligence claim at the close of discovery, when they deposed Greenberg. (*See* Kresky 9/26/96 Dec. ¶¶ 9–10, 14.) According to plaintiffs' counsel, "[i]t was at the conclusion of the deposition of defendant Greenberg that plaintiffs realized the difficulty of proving that defendant Greenberg either retained defendant Parco or directed his activities." (*Id.* ¶ 14.) [6]

While plaintiffs did not take defendant Greenberg's deposition until the very end of the discovery period, defendant Greenberg's Answer to the Complaint on March 27, 1996 made clear his affirmative defense that he never hired or had a relationship with Parco:

> [Greenberg] never had any relationship with defendant VINCENT PARCO [or] INTERCONTINENTAL INVESTIGATIONS, INC .... and never engaged or

hired these defendants or acted in concert or conspired with them, either directly or indirectly, to do or fail to do any act with respect to any allegations contained in the complaint in violation of federal, state or common law; and that these defendants were never the agents, servants or employees of answering defendant, nor was answering defendant vicariously liable for any act or failure to act of any other defendant in this action.

(Greenberg Answer, dated 3/27/96, ¶ 5; *see also* Greenberg Amended Answer, dated 8/12/96, ¶ 7.)

## *ANALYSIS*

### I. *SUMMARY JUDGMENT STANDARD*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991); *Burger v. Litton Indus., Inc.,* 91 Civ. 0918, 1996 WL 421449 at *7 (S.D.N.Y. April 25, 1996) (Peck, M.J.), *report & rec. adopted by* 1996 WL 609421 (S.D.N.Y. Oct.22, 1996). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, here, the defendants. *E.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994); *Burger v. Litton,* 1996 WL 421449 at *7.

In evaluating the record to determine whether there is a genuine issue as to any

---

**5.** The proposed Second Amended Complaint, consistent with the current state of the pleadings, asserts such a claim by both plaintiffs against Parco and by plaintiff Lucille Turecki only (and not Berman) against defendant Greenberg. (*See* Kresky 9/26/96 Dec. ¶ 19.)

**6.** Despite this admission, plaintiffs have not offered to drop the willful violation claim against defendant Greenberg in return for permission to file the negligence claim.

material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513; *Chambers v. TRM,* 43 F.3d at 36; *Gallo v. Prudential,* 22 F.3d at 1223. The Court draws all inferences in favor of the nonmoving party—here, plaintiffs—only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *Burger v. Litton,* 1996 WL 421449 at *7. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM,* 43 F.3d at 37.

## II. *FACTUAL ISSUES ABOUT THE MEANING OF THE SETTLEMENT AGREEMENT RELEASE PRECLUDE SUMMARY JUDGMENT ON THAT ISSUE*

The Court first addresses the issue of the meaning of the Settlement Agreement, be-

cause if, as defendants contend, plaintiffs released Dr. Turecki's attorneys and ·agents, the Court need not determine the reach of the Fair Credit Reporting Act.

As the Court stated in its prior opinion in this case:

"It is well established in New York that ' "a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between the parties." ' " *DuFort v. Aetna Life Ins. Co.,* 818 F.Supp. 578, 581 (S.D.N.Y.1993) (quoting *Skluth v. United Merchants & Manufacturers, Inc.,* 163 A.D.2d 104, 559 N.Y.S.2d 280, 282 (1st Dep't 1990) (quoting *Appel v. Ford Motor Co.,* 111 A.D.2d 731, 732, 490 N.Y.S.2d 228, 229 (1985))).

*Berman v. Parco,* 1996 WL 465749 at *7.

The Settlement Agreement provides that it is governed by New York law. (Janice Weintraub 9/30/96 Aff. Ex. E, ¶ 24.) Thus, the Court looks to New York's law of contract interpretation.[7]

Under New York law, the construction of an`unambiguous contract is a matter of law,

---

7. Plaintiffs rely not on contract interpretation principles but rather on New York General Obligation Law § 15–108, which provides that:

> (a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide....

Whether considered under contract interpretation principles or under N.Y.G.O.L. § 15–108, the issue before the Court is whether the release contained in the Settlement Agreement clearly releases Dr. Turecki's attorneys and agents. *See, e.g., Wells v. Shearson Lehman/American Express, Inc.,* 72 N.Y.2d 11, 19, 530 N.Y.S.2d 517, 521, 526 N.E.2d 8, 11–12 (1988) ("As with contracts generally, the courts must look to the language of a release—the words used by the parties—to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous."). The *Wells* court held that a release need not "specifically name or identify the persons to be discharged." *Id.* The *Wells* court further explained:

> The release does not purport to deny fault for unidentified persons; no deception is alleged

in the circumstances of obtaining the release; no ambiguity is raised by reading the words "anyone else" in the context of the entire document. To the contrary, the words "anyone else" in this release clearly must have referred to persons unrelated to defendants, ... because the related persons were already specifically identified by category; "anyone else" necessarily meant additional, other persons. By the same token, "anyone else" in this release refers not to all the world generally but is limited to a class of persons "in connection with" the events at issue. The description of the discharged parties read in context of this release makes clear that the parties intention was to put an end to all of plaintiffs' claims relating to the buyout. The release said exactly that. At two points, the release refers to a settlement objective as the desire to put plaintiffs' claims "finally to rest." In a transaction of this magnitude, it is difficult to imagine how this expressed intention could even have been accomplished without resort at some point to a catchall category.

*Wells,* 72 N.Y.2d at 23–24, 530 N.Y.S.2d at 524, 526 N.E.2d at 14–15. Thus, the *Wells* Court held that the release of "the named defendants, their 'agents, ... representatives ... or anyone else' ", *id.* at 14, 530 N.Y.S.2d at 518, 526 N.E.2d at 13–14, released companies who had provided expert

appropriate for summary judgment resolution if the contract is clear on its face. *See, e.g., Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir.1990); *Nicholas Labs. Ltd. v. Almay, Inc.,* 900 F.2d 19, 21 (2d Cir.1990); *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989); *Chase Manhattan Bank, N.A. v. Keystone Distrib. Inc.,* 873 F.Supp. 808, 810–11 (S.D.N.Y.1994); *Royal Bank of Canada v. Mahrle,* 818 F.Supp. 60, 62 (S.D.N.Y.1993); *Broadway Nat'l Bank v. Progressive Cas. Ins. Co.,* 775 F.Supp. 123, 126 (S.D.N.Y.1991), *aff'd mem.,* 963 F.2d 1522 (2d Cir.1992).

Where the terms of an agreement are clear and unambiguous, the Court will not look beyond the "four corners" of the agreement, and parol evidence of the parties' intentions is inadmissible. *See, e.g., Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992); *Nicholas Labs. Ltd. v. Almay, Inc.,* 900 F.2d at 20; *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990); *G.D. Searle & Co. v. Medicore Communications, Inc.,* 843 F.Supp. 895, 906 (S.D.N.Y.1994) ("when the terms of an agreement are clear and unambiguous, a court will not look beyond the 'four corners' of a document to determine what the parties meant."); *Royal Bank of Canada v. Mahrle,* 818 F.Supp. at 62; *Broadway Nat'l Bank v. Progressive Cas. Ins. Co.,* 775 F.Supp. at 126–27; *Health–Chem Corp. v. Baker,* 737 F.Supp. 770, 773 (S.D.N.Y.), *aff'd mem.,* 915 F.2d 805 (2d Cir.1990); *Adler & Shaykin v. Wachner,* 721 F.Supp. 472, 476, 479 (S.D.N.Y.1988); *W.W.W. Assoc., Inc. v. Giancontieri,* 77 N.Y.2d 157, 162–63, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639, 642 (1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.... It is well settled that 'extrinsic and parol evidence

is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.' "); *Wells v. Shearson Lehman/American Express, Inc.,* 72 N.Y.2d at 19, 530 N.Y.S.2d at 521, 526 N.E.2d at 11–12.

Further, whether a contract is clear and unambiguous, or ambiguous, is a question of law to be resolved by the Court. *See, e.g., Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d at 429; *EJS–ASOC Ticaret ve Danismanlik Ltd. Sti v. AT & T,* 886 F.Supp. 331, 334 (S.D.N.Y.1994); *Chase Manhattan Bank, N.A. v. Keystone Distrib. Inc.,* 873 F.Supp. at 811; *W.W.W. Assoc., Inc. v. Giancontieri,* 77 N.Y.2d at 162, 565 N.Y.S.2d at 443, 566 N.E.2d 639 ("whether or not a writing is ambiguous is a question of law to be resolved by the courts."); *Sutton v. East River Sav. Bank,* 55 N.Y.2d 550, 554, 450 N.Y.S.2d 460, 462, 435 N.E.2d 1075, 1077 (1982) ("the threshold decision on whether a writing is ambiguous is the exclusive province of the court"). The "traditional view is that the search for ambiguity must be conducted within the four corners of the writing." *Adler & Shaykin v. Wachner,* 721 F.Supp. at 479; *see also, e.g., Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d at 527.

"Contract language is not ambiguous if it has a 'definite and precise meaning ... concerning which there is no reasonable basis for a difference of opinion.' " *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d at 1277 (quoting *Breed v. Ins. Co. of North America,* 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282–83 (1978)).[8] "Conversely, a term is ambiguous when it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement....' " *Health–Chem Corp. v. Baker,* 737 F.Supp. at 773.[9]

---

advice to defendants. As discussed below in text, if the Settlement Agreement had contained only paragraph 9, releasing Dr. Turecki and his agents and attorneys, the *Wells* rule would apply; but here, paragraph 16's reference to litigation against third parties creates an ambiguity in the release that precludes summary judgment.

**8.** *See also, e.g., Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d at 428; *Metropolitan Life Ins.*

*Co. v. RJR Nabisco, Inc.,* 906 F.2d at 889; *EJS–ASOC Ticaret v. AT & T,* 886 F.Supp. at 334; *Chase Manhattan Bank, N.A. v. Keystone Distrib., Inc.,* 873 F.Supp. at 811; *Health–Chem Corp. v. Baker,* 737 F.Supp. at 773.

**9.** *Accord, e.g., Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d at 428; *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d at 527; *Chase Manhattan Bank, N.A. v. Keystone Distrib., Inc.,*

Clear contractual language, however, does not become ambiguous simply because the parties to the litigation contend for different interpretations. *See, e.g., Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d at 428; *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d at 889; *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d at 1277; *EJS–ASOC Ticaret v. AT & T,* 886 F.Supp. at 334; *Chase Manhattan Bank, N.A. v. Keystone Distrib., Inc.,* 873 F.Supp. at 811; *Broadway Nat'l Bank v. Progressive Cas. Inc. Co.,* 775 F.Supp. at 126; *Health–Chem Corp. v. Baker,* 737 F.Supp. at 773.

"Where the terms of the agreement, 'giving due consideration to the surrounding circumstances [and] apparent purpose which the parties seek to accomplish' are not 'wholly unambiguous,' summary judgment is improper." *Chase Manhattan Bank, N.A. v. Keystone Distrib., Inc.,* 873 F.Supp. at 811. Thus, "when ambiguity exists and the resolution of the ambiguity hinges on such extrinsic matters as the credibility of witnesses or documents or upon choosing one among several reasonable inferences that may be drawn from such extrinsic evidence, a jury, and not a court, should decide what meaning is to be ascribed to the contract." *Id. See also, e.g., Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d at 528; *Wards Co. v. Stamford Ridgeway Assoc.,* 761 F.2d 117, 120 (2d Cir.1985).

Here, the language of paragraph 9 of the Settlement Agreement, considered in isolation, clearly and unambiguously releases Dr. Turecki's attorneys and agents, including Greenberg and Parco. *See, e.g., Wells v. Shearson Lehman/American Express, Inc.,* 72 N.Y.2d at 15, 530 N.Y.S.2d at 518, 524, 526 N.E.2d at 11, 14–15. The Settlement Agreement, however, must be read as a whole.[10]

Thus, paragraph 9 must be read in light of paragraph 16, allowing suits against "third parties." If the release in paragraph 9 covered Dr. Turecki's attorneys and agents, it is not clear who would be left to be sued as a "third party" in paragraph 16. Thus, the Settlement Agreement (and the paragraph 9 release therein) is ambiguous, and the Court can consider parol evidence. Berman has submitted evidence as to his negotiations with Dr. Turecki's counsel, alleging that those discussions made clear that Berman and Lucille Turecki would be free to sue Greenberg and Parco. (Berman 10/16/96 Dec. ¶¶ 11–21; *see also* Lucille Turecki 10/16/96 Dec. ¶¶ 25–26.) [11]

Because the Settlement Agreement's release is ambiguous, the Court can and does consider parol evidence, and Berman's parol evidence raises additional issues of fact that preclude summary judgment on the release issue.

### III. THE FAIR CREDIT REPORTING ACT

#### A. The Statutory Provisions

Plaintiffs have sued defendants under 15 U.S.C. § 1681n and § 1681q of the Fair Credit Reporting Act (the "FCRA" or the "Act"), and have sought to amend to assert a negligence claim under § 1681o against defendant Greenberg.

Section 1681n provides:

**§ 1681n. Civil liability for willful noncompliance**

Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any con-

---

873 F.Supp. at 811; *see also, e.g., Royal Bank of Canada v. Mahrle,* 818 F.Supp. at 62; *Broadway National Bank v. Progressive Cas. Ins. Co.,* 775 F.Supp. at 127; *Adler & Shaykin v. Wachner,* 721 F.Supp. at 479.

**10.** *See, e.g., International Klafter Co. v. Continental Cas. Co.,* 869 F.2d 96, 99 (2d Cir.1989) ("the court must look to 'all corners of the document' rather than view sentences or clauses in isolation"); *Health–Chem Corp. v. Baker,* 737 F.Supp. at 773; *W.W.W. Assoc., Inc. v. Giancontieri,* 77 N.Y.2d at 163, 565 N.Y.S.2d at 443, 566

N.E.2d at 642; *American Express Bank Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't 1990) ("A contract should be construed so as to give full meaning and effect to all of its provisions."), *app. denied,* 77 N.Y.2d 807, 569 N.Y.S.2d 611, 572 N.E.2d 52 (1991).

**11.** The Court need not determine if the reference in paragraph 9 to "attorneys" relates only to Dr. Turecki's then-current attorneys, and if so, whether Greenberg was still acting as Dr. Turecki's attorney.

sumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n.

Section 1681q creates criminal liability:

**§ 1681q. Obtaining information under false pretenses**

Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than $5,000 or imprisoned not more than one year, or both.

Violation of § 1681q also results in civil liability under § 1681n, and possibly § 1681o.[12] *See, e.g., Comeaux v. Brown & Williamson Tobacco Co.,* 915 F.2d 1264, 1273 (9th Cir. 1990); *Zamora v. Valley Federal Sav. & Loan Ass'n of Grand Junction,* 811 F.2d 1368, 1370 (10th Cir.1987); *Kennedy v. Border City Sav. & Loan Ass'n,* 747 F.2d 367, 368–69 & n. 1 (6th Cir.1984); *Hansen v. Morgan,* 582 F.2d 1214, 1218–20 (9th Cir. 1978); *Daley v. Haddonfield Lumber Inc.,* 943 F.Supp. 464, 467 & n. 7 (D.N.J.1996); *Letscher v. Swiss Bank Corp.,* 94 Civ. 8277, 1996 WL 183019 at *6 (S.D.N.Y. April 16, 1996) (violation of § 1681q leads to civil liability under § 1681n but not § 1681o); *Popik v. American Int'l Mortgage Co.,* 936 F.Supp. 173, 176 (S.D.N.Y.1996); *Advanced Conservation Systems, Inc. v. Long Island Lighting Co.,* 934 F.Supp. 53, 54 & n. 1 (E.D.N.Y. 1996); *Baker v. Bronx–Westchester Investigations, Inc.,* 850 F.Supp. 260, 263 & n. 7 (S.D.N.Y.1994); *Rice v. Montgomery Ward & Co.,* 450 F.Supp. 668, 670–71 (M.D.N.C. 1978); *Klapper v. Shapiro,* 154 Misc.2d 459, 464–65, 586 N.Y.S.2d 846, 850–51 (Sup.Ct. N.Y.Co.1992).

Section 1681o creates a negligence cause of action:

**§ 1681o. Civil liability for negligent noncompliance**

Any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681o.

To understand these provisions, it is necessary to look at the Act's purpose and definitions.

In enacting the Fair Credit Reporting Act in 1970, Congress specifically set out the purpose behind the Act:

(b) It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b).

The Act defines "consumer report" and "consumer reporting agency," as follows:

(d) The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving

---

12. The Court need not decide in this case whether civil liability for violation of § 1681q can arise under § 1681o.

as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title.

. . . .

(f) The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(d), § 1681a(f).

The Act does not define the term "user of information." It does specify, however, the persons to whom a consumer reporting agency properly can furnish a consumer report. 15 U.S.C. § 1681b.[13] The Act also uses the term "users of consumer reports" in Section 1681m to refer to one who denies credit, employment or insurance based on a consumer report from a consumer reporting agency.[14]

Plaintiffs do not claim that either Greenberg or Parco is a consumer reporting agency. (*See* Plfs. Br. at 7–12.) The issue on the

summary judgment motion, therefore, is whether Greenberg or Parco are "users of information" within the FCRA's meaning, where the use of plaintiffs' consumer information was in connection with an arbitration.

**B. Defendants Greenberg and Parco Are "Users of Information" Within the Meaning of the Fair Credit Reporting Act**

**1. There is A Genuine Issue of Material Fact as to Whether Parco Obtained Information About Plaintiffs From a Consumer Reporting Agency**

The parties' briefs largely ignore the threshold question of whether Parco obtained a "consumer report" (or the information from such a report) from a "consumer reporting agency." Parco denied that his agency obtained information about plaintiffs from TRW, Transunion or similar consumer reporting agencies. (Parco Dep. at 47–48, 98–99, 150.) Parco, however, did not personally obtain the information about plaintiffs; operatives working for Parco obtained the information, and Parco was unable to testify as to how they obtained the information. (*See, e.g.,* Parco Dep. at 22–24.) Thus, Parco's denial of obtaining the information from a consumer reporting agency is not competent testimony and may not be considered on this motion. *See* Fed.R.Civ.P. 56(e). Moreover,

---

**13.** Section 1681b provides in pertinent part:

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

. . . .

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

. . . .

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

The FCRA requires consumer reporting agencies to "maintain reasonable procedures . . . to limit

the furnishing of consumer reports to the purposes listed under section 1681b of this title" and "to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e.

**14.** Section 1681m provides:

**§ 1681m. Requirements on users of consumer reports**
**Adverse action based on reports of consumer reporting agencies**

(a) Whenever credit or insurance for personal, family, or household purposes, or employment involving a consumer is denied or the charge for such credit or insurance is increased either wholly or partly because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall so advise the consumer against whom such adverse action has been taken and supply the name and address of the consumer reporting agency making the report.

15 U.S.C. § 1681m(a).

plaintiffs have submitted the deposition testimony of another private investigator, Mr. Mooney, who opined that Parco's agency must have improperly obtained information from a consumer reporting agency, because the information could not have been obtained using the "pretexts" Parco described in his deposition. (*E.g.*, Mooney Dep. at 20–27, 47–49.) While defendants challenge Mooney's qualifications as an expert, the Court need not decide whether he is qualified. Even without Mooney's testimony, defendants have not met their burden as movants of showing that the information about plaintiffs did not come from a consumer reporting agency, since defendants have not presented the testimony of Parco's operatives. Thus, whether the information about plaintiffs came from a consumer reporting agency is a question of fact precluding summary judgment *if* Parco and/or Greenberg are "users" of such information covered by the Act.

### 2. Defendants Greenberg and Parco are "Users of Information" Under the FCRA

Defendants' argument boils down to the proposition that they are not "users" within the meaning of the Act because the credit information that Parco obtained about plaintiffs was to be used for an arbitration, not for a consumer credit-related transaction in commerce. The Court disagrees. Upholding defendants' argument would allow persons who obtain consumer reports from consumer reporting agencies for improper purposes to escape liability under the Act. Not surprisingly, most courts that have faced this issue have rejected defendants' argument.

Judge Motley's decision in *Boothe v. TRW Credit Data*, 523 F.Supp. 631 (S.D.N.Y.1981), is directly on point. In *Boothe*, a business concerned that Boothe's company was selling counterfeits of its product hired a private investigator, who obtained a report from TRW. 523 F.Supp. at 632–33. Defendants moved to dismiss Boothe's FCRA claim on the ground that the report "was not a consumer report as defined by the Act because the investigation ... was a legitimate, good faith investigation of Mr. Boothe's business, unconnected to any consumer credit transaction." *Id.* at 633.

Judge Motley explained how to determine whether a report is a consumer report covered by the Act:

The purpose of the investigation in connection with which the report was released does not by itself determine whether the report is a "consumer report," as defendants suggest. It is true that if the report was compiled solely for the purpose of aiding in an investigation of a consumer's business or for determining a consumer's eligibility for commercial credit, it is not a consumer report, even if it contains information about the consumer.... However, *if the report was collected for one of the purposes listed in section 1681a(d) it is a consumer report, regardless of the reason for which it is subsequently disseminated. Thus, the proper focus for determining whether a report falls under the Act's definition of consumer report is the purpose for which it was collected, and not solely the purpose for which it was released.*

*Defendants would have this court hold that the release of a consumer report to a third party for a purpose not permitted by the Act converts the report into one outside the scope of the Act.* Such a holding would render section 1681b, which restricts the release of consumer reports to certain specified circumstances, totally ineffective. *The Act applies when the information in question was collected for one of the purposes provided in the Act, and it requires that the information be made available to third parties only for those purposes.*

523 F.Supp. at 633–34 (emphasis added); *accord, e.g., Popik v. American Int'l Mortgage Co.*, 936 F.Supp. 173, 176 (S.D.N.Y.1996). Thus, because plaintiffs here allege that Parco obtained the information in his June 15, 1995 letter from a consumer reporting agency, the information is a consumer report even though obtained by Parco, under pretext, for use in a marital arbitration rather than a consumer credit transaction. Under *Boothe*, the FCRA applies and summary judgment must be denied (subject to Point III.C below as to defendant Greenberg).

The New York Supreme Court reached a similar result in a case involving an attorney who submitted a consumer credit report

about opposing counsel in a judicial proceeding. *Klapper v. Shapiro*, 154 Misc.2d 459, 586 N.Y.S.2d 846 (Sup.Ct.N.Y.Co.1992). Klapper sued TRW and his opposing counsel in a probate proceeding for submission of a consumer credit report to the probate court. The Court first described the focus of the Act:

> The focus of the FCRA is the credit reporting agency, and the confidentiality and accuracy of the information it collects on the consumer.... *[The FCRA is] structured to ensure that once a consumer reporting agency maintains data on a person's credit history, the information* would not only be accurate but *would only be released for the express purposes set forth in 15 U.S.C. § 1681b* ..., and would be consistent with the policy underlying these acts: to protect consumers in their individual capacities from unscrupulous use of credit reports.

*Klapper v. Shapiro*, 154 Misc.2d at 462, 586 N.Y.S.2d at 849 (emphasis added). In analyzing attorney Shapiro's liability, the Court held that a "user of a consumer credit report who obtains the report for an impermissible purpose is deemed to have employed false pretenses to obtain the report." *Id.* at 465, 586 N.Y.S.2d at 851. Because attorney Shapiro submitted the report to the Court on behalf of his client, the Court held that "Shapiro can be considered a 'user' of the credit report within the purview" of the Act. *Id.* The Court entered summary judgment against attorney Shapiro. *Id.* at 467, 586 N.Y.S.2d at 852.

Similarly, in *Hansen v. Morgan*, 582 F.2d 1214 (9th Cir.1978), a political candidate sued persons who had obtained a credit report about him from a credit bureau at the behest of his opponent. *Id.* at 1215–17. The Ninth Circuit rejected the defendants' argument that the FCRA did not apply because they were not using the report for a consumer credit transaction. The Court found the report to be a consumer report as defined in the Act because the credit bureau collected the information for credit reasons and, knowing nothing of the defendants' real reasons for requesting the report, provided it to the defendants with the expectation it would be used for purposes consistent with the Act. *Id.* at 1218. The Ninth Circuit held that the report was obtained using false pretenses in violation of the Act. *Id.* at 1219–20.

The Ninth Circuit followed *Hansen* more recently in *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264 (9th Cir.1990). Brown & Williamson obtained a credit report on an individual with whom it was involved in an employment-related litigation. *Id.* at 1266–67. As do defendants here, Brown & Williamson alleged that the report was not a "consumer report" because it was not used for consumer purposes. *Id.* at 1273. The Ninth Circuit rejected the argument, stating:

> B & W ... claims that the report was not a consumer report because it sought the report for a non-consumer purpose. The term "consumer report" is defined in section 1681a(d). The plain language of section 1681a(d) reveals that *a credit report will be construed as a "consumer report" under the FCRA if the credit bureau providing the information expects the user to use the report for a purpose permissible under the FCRA, without regard to the ultimate purpose to which the report is actually put.* Thus, if the user of the report led the agency preparing the credit report to believe, either through commission or omission, that the report was to be used for a consumer purpose such as for an employment purpose, the report is a consumer report within the meaning of the FCRA.
>
> B & W's construction of the statute would render meaningless the FCRA's goal of allowing the release of credit reports for certain purposes only. B & W's construction also would render section 1681q meaningless by allowing those who request reports under false pretenses, stating a permissible purpose, to be exempt from section 1681q by using reports for a non-permissible purpose. The district court's conclusion that a report can be a "consumer report" under the FCRA, but not governed by the FCRA because it is for some non-consumer purpose, has no basis in the law of this or any other circuit. *The law of this circuit, as well as that of almost all other circuits that have ad-*

*dressed the question, supports the following proposition: If a consumer reporting agency provides a report based on a reasonable expectation that the report will be put to a use permissible under the FCRA, then that report is a "consumer report" under the FCRA and the ultimate use to which the report is actually put is irrelevant to the question of whether the FCRA governs the report's use and the user's conduct.*

915 F.2d at 1273–74 (citations & fns. omitted, emphasis added). *Accord, e.g., Heath v. Credit Bureau of Sheridan, Inc.,* 618 F.2d 693, 696 (10th Cir.1980) (credit bureau's supplying report about union member to union which requested it to embarrass and discredit the member stated a FCRA claim against the credit bureau; "even if the request for [personal financial status] information was made under the false pretense of a proper purpose, data supplied would be a consumer report if the agency expected it to be used for the represented purpose."); *Rice v. Montgomery Ward & Co.,* 450 F.Supp. 668, 672 (M.D.N.C.1978) (defendant who obtained report from credit bureau for use in litigation can be liable under FCRA; "if this Court were to hold that the FCRA does not apply where the recipient of the information obtains it for an unauthorized purpose, it would undermine the consumer's right to privacy, one of the policies underlying the FCRA."); *Belshaw v. Credit Bureau of Prescott,* 392 F.Supp. 1356, 1359 (D.Ariz.1975) (rejects law firm defendant's argument that report from credit bureau is not a "consumer report" if not requested for consumer credit, insurance or employment reasons; "The Act cannot be interpreted as applicable to the activities of credit reporting agencies only when the con-

sumer applies for credit, insurance, or employment, leaving them otherwise free to continue the very practices the Act was designed to prohibit.... If a consumer report is only a report made for one of the purposes enumerated in § 1681a(d), then § 1681b(3), restricting the uses to which a consumer report may be put, adds nothing to the Act.").[15]

Moreover, because plaintiffs allege a violation of § 1681q, the issue is even simpler—if Parco obtained any information from a consumer reporting agency under "false pretenses," defendants are liable, even if the information supplied by the consumer reporting agency were not a consumer report. *See, e.g., Ippolito v. WNS, Inc.,* 864 F.2d 440, 448 n. 8 (7th Cir.1988); *Kennedy v. Border City Savings & Loan Ass'n,* 747 F.2d 367, 369 (6th Cir.1984); *Allen v. Calvo,* 832 F.Supp. 301, 303 n. 1 (D.Ore.1993); *Rice v. Montgomery Ward & Co.,* 450 F.Supp. 668, 671 (M.D.N.C.1978) ("where liability is premised on a violation of § 1681q, it is immaterial whether the information that passed from the [credit bureau] to [defendant] was a 'consumer report,' since § 1681q pertains to all information on a consumer which is obtained from a consumer reporting agency and not just to consumer reports.").

Defendants rely on *Henry v. Forbes,* 433 F.Supp. 5 (D.Minn.1976), for the proposition that the FCRA only applies to consumer credit, insurance and employment transactions. (*See* Greenberg Br. at 8; Parco Br. at 12.) In *Henry,* an attorney and lobbyist for a railroad obtained a credit report on Ms. Henry, who was considered an adversary of Forbes and the railroad. 433 F.Supp. at 6–7. The *Henry* Court found that the report was not a consumer report because it was not

---

15. *See also, e.g., Daley v. Haddonfield Lumber Inc.,* 943 F.Supp. 464, 467–68 (D.N.J.1996) ("In evaluating whether a person obtained a credit report under false pretenses, a court must examine the limited permissible purposes for which consumer reports may be released under section 1681b of the FCRA.... In this circuit, the absence of a consumer relationship between the requesting party and the subject of the credit report requires the court to find that the requesting party did not have a permissible purpose to obtain the report."); *Baker v. Bronx–Westchester Investigations, Inc.,* 850 F.Supp. 260, 263–64 (S.D.N.Y.1994) (follows 9th Cir.'s *Hansen* ap-

proach to defining a consumer report but found no false pretense when investigators obtained report for permissible purpose of assisting judgment creditor collect judgment); *Mone v. Dranow,* 945 F.2d 306, 308 (9th Cir.1991) (corporate officer's obtaining a credit report on ex-employee who corporation was suing to see if he would be able to satisfy a judgment, not permissible under the FCRA); *Zamora v. Valley Federal Sav. & Loan Ass'n of Grand Junction,* 811 F.2d 1368, 1370–71 (10th Cir.1987) (employee willfully violated FCRA by obtaining under false pretenses credit report on spouse of person seeking employment).

prepared for any of the purposes enumerated in the FCRA. *Id.* at 8. The *Henry* Court concluded that the "Fair Credit Reporting Act, in terms or in legislative intent, does not cover the procuring of information about persons not involved in consumer transactions." *Id.* at 9. The *Henry* Court concluded that:

> If the purpose of the report is not among the enumerated purposes which define "consumer report," any person with access to a reporting agency account may with any motive request personal and credit information about a private individual, cause an investigation to be made without the subject's knowledge, and act on the information without giving the subject any of the protections against inaccuracy and misuse that are provided in the Act.

*Id.* at 9–10.

Subsequent judicial decisions, however, have explicitly distinguished, criticized and/or disagreed with *Henry*. *See, e.g., Boothe v. TRW Credit Data*, 523 F.Supp. 631, 633–34 (S.D.N.Y.1981); *Ippolito v. WNS, Inc.*, 864 F.2d 440, 449 n. 10 (7th Cir.1988); *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693, 696 (10th Cir.1980) (*Henry* "springs from a mistaken premise"); *Rice v. Montgomery Ward & Co.*, 450 F.Supp. 668, 672 (M.D.N.C.1978) (Court "decline[s] to follow the decision in *Henry* "). Moreover, all of the opinions cited above implicitly disagree with *Henry*. Further, *Henry* has never been followed in this Circuit, based on the Court's Westlaw research. This Court will not be the first to do so. To the contrary, in my view *Henry* is not good law and should not be followed.

Because there are issues of fact as to whether Parco obtained a consumer report or other information from a consumer reporting agency using false pretenses, and whether he did so willfully, summary judgment must be denied.

### C. *Defendant Greenberg is Entitled to Summary Judgment Because There is No Evidence That He (as Opposed to Parco) Acted Willfully*

Although defendant Greenberg is a "user of information" within the meaning of the FCRA, he is entitled to summary judgment because plaintiffs have not presented any evidence that he acted willfully.

Sections 1681n and 1681q require willful conduct for liability to attach. "This 'willfulness' requirement is synonymous with the 'intent' requirement in a criminal statute. To constitute willfulness under the Fair Credit Reporting Act, 'a party must have knowingly and intentionally committed an act in conscious disregard for the rights of others.' " *Letscher v. Swiss Bank Corp.*, 94 Civ. 8277, 1996 WL 183019 at *7 (S.D.N.Y. April 16, 1996) (citations omitted).

The only evidence in the record, however, is that: (1) Greenberg did not hire Parco (Dr. Turecki did); (2) Greenberg had no knowledge of what Parco did to obtain the information in Parco's June 15, 1995 letter; (3) Greenberg did not directly or indirectly direct Parco's work or his report; and (4) Greenberg had no substantive discussion with Parco. (*See* Fact section entitled "The Parco–Dr. Turecki–Greenberg Relationship.") Plaintiffs have offered no evidence of Greenberg's involvement. Indeed, in seeking to amend the complaint to assert a negligence claim against Greenberg, plaintiffs admitted that they "realized the difficulty of proving that defendant Greenberg either retained defendant Parco or directed his activities." (Kresky 9/26/96 Dec. ¶ 14.) Accordingly, since there is no evidence that Greenberg acted willfully, he is entitled to summary judgment on plaintiffs' FCRA claim. *See Allen v. Calvo*, 832 F.Supp. 301, 304 (D.Ore.1993) (summary judgment for defendant where plaintiff "offered no evidence to controvert defendant's affidavit testimony that he had a good faith belief that he was entitled to the consumer report").

### IV. *PLAINTIFF'S MOTION TO AMEND THE COMPLAINT TO ASSERT A NEGLIGENCE CLAIM AGAINST DEFENDANT GREENBERG SHOULD BE DENIED*

Rule 15(a) of the Federal Rules of Civil Procedure instructs that "leave [to amend] shall be freely given when justice so requires."

Analysis of any motion to amend starts with the Supreme Court's decision in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962):

> Rule 15(a) declares that leave to amend 'shall be fully given when justice so requires'; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, by 'freely given.'

*Id.* at 182, 83 S.Ct. at 230 (citations omitted).

"Prejudice to the opposing party if the motion is granted has been described as the most important reasons for denying a motion to amend. Prejudice may be found, for example, when the amendment is sought after discovery has been closed.... Undue delay [and] bad faith ... are other reasons for denying a motion to amend." 1 M. Silberberg, *Civil Practice in the Southern District of New York* § 6.26, citing *Richardson Greenshields Sec. Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987); *State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981); *Bymoen v. Herzog, Heine, Geduld, Inc.,* 88 Civ. 1796, 1991 WL 95387 at *1–2 (S.D.N.Y. May 28, 1991) (Wood, J.); *Priestley v. American Airlines, Inc.,* 89 Civ. 8265, 1991 WL 64459 at *2 (S.D.N.Y. April 12, 1991) ("Insofar as the proposed claim is not predicated on facts learned after the pleading stage of the litigation, the resulting delay is not excusable.... Undue prejudice warrants denial of leave to amend where the proposed claim will significantly increase the scope of discovery when the case is ready for trial.").

"Delay in seeking leave to amend a pleading is generally not, in and of itself, a reason to deny a motion to amend. However, the Court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.... Leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier." 1 M. Silberberg, *Civil Practice in the Southern District of New York* § 6.26, citing, *inter alia, Bymoen* and *Priestly.*

For further discussion of the issues of prejudice and undue delay, *see generally* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* §§ 1487–88 ("Perhaps the most important factor listed by the [Supreme] Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading.... [A]lthough delay alone may not result in a denial of leave to amend, some courts have held that leave may be withheld if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them."); 3 Moore, *Moore's Federal Practice* ¶ 15.08[4] ("The most common reasons for denying leave to amend are that the amendment will result in undue prejudice to the other party, is unduly delayed, is offered in bad faith or for a dilatory purpose, or that the party has had sufficient opportunity to state a claim and has failed.").

Here, plaintiffs have been guilty of unexplained undue delay, and an amendment now to assert a negligence claim would prejudice defendant Greenberg.

Plaintiffs began this action in January 1996. In March 1996, plaintiffs dismissed their claims against the Chase Manhattan Bank. In June 1996, plaintiffs filed an amended complaint. In September 1996, plaintiffs entered into two separate stipulations to further modify the complaint—a September 12, 1996 stipulation dismissing plaintiff Steve Miller Inc.'s claims with prejudice and a September 16, 1996 stipulation dismissing plaintiff Berman's FCRA claim against Green-

berg. Thus, the proposed "Second Amended Complaint" in reality would be the sixth version of plaintiffs' complaint.

Moreover, Greenberg's March 27, 1996 Answer made clear that he was defending on the ground that he never hired or had any relationship with Parco. (Greenberg 3/27/96 Answer ¶ 5, quoted at p. 207 above.) Thus, plaintiffs' claim that they did not realize the need to assert a negligence claim until Greenberg's deposition (*e.g.*, Kresky 9/26/96 Dec. ¶¶ 9–10, 14), rings hollow. Plaintiffs could and should have asserted such a claim based on Greenberg's answer. Indeed, it is common practice in both civil and criminal cases to assert an alternative negligence (or other lesser intent) type claim in addition to a willful (or other higher intent) claim. *See, e.g., Letscher v. Swiss Bank Corp.*, 94 Civ. 8277, 1996 WL 183019 at *6–7 (S.D.N.Y. April 16, 1996) (claims for willful and negligent violations of FCRA alleged); *see also, e.g., Atherton v. FDIC*, 519 U.S. 213, —— – ——, 117 S.Ct. 666, 674–76, 136 L.Ed.2d 656 (1997) (complaint alleged gross negligence and negligence); *In re Alleged Food Poisoning Incident*, 770 F.2d 3, 5 (2d Cir.1985) (complaint alleged willful misconduct and negligence); *Barrows v. Forest Lab., Inc.*, 742 F.2d 54 (2d Cir.1984) (amendment denied where plaintiffs failed to "explain why the new theories could not have been presented in the original complaint as alternatives"); *Bouzo v. Citibank, N.A.*, 88 Civ. 1446, 1995 WL 144825 at *7–8 (S.D.N.Y. March 31, 1995) (court declines to permit plaintiff to amend breach of contract complaint to also raise claims of fraud and negligent supervision, stating that "there does not appear to be any reason why these claims could not have been raised earlier," and additional discovery would be needed on new claims), *vacated on other grounds*, 96 F.3d 51 (2d Cir. 1996); *Priestley v. American Airlines, Inc.*, 89 Civ. 8265, 1991 WL 64459 at *1–2 (S.D.N.Y. April 12, 1991) (denies leave to amend negligence claim to add claim of willful misconduct, where factual basis for added claim known to plaintiff at time of original claim, and allowing amendment would "necessitate a reopening of the discovery period when trial is imminent").

Plaintiffs' proposed Second Amended Complaint also violates the Rule 16 Initial Pretrial Conference Order in this case. That Order provided that "[a]ny motion to join parties or amend the pleadings must be made by June 28, 1996." Based on Greenberg's March 27, 1996 Answer, plaintiffs were or should have been aware of the possibility of a negligence claim before the deadline for amending the pleadings. Nevertheless, plaintiffs did not seek to amend until after the close of discovery, shortly before defendants were scheduled to file their summary judgment motion.

Defendant Greenberg conducted discovery based on a willfulness claim. Defending against a negligence claim would require additional discovery and might well entail a different defense strategy. Delay would also be prejudicial to co-defendant Parco, since the case otherwise is trial ready.

In situations similar to this, Courts have denied leave to amend. For example, in *Bymoen v. Herzog, Heine, Geduld, Inc.*, 88 Civ. 1796, 1991 WL 95387 (S.D.N.Y. May 28, 1991), Judge Wood denied leave to amend. Judge Wood began by noting that "where a considerable period of time has passed between the filing of the complaint and the motion to amend, the burden is upon the movant to show some valid reason for the movant's neglect and delay." *Id.*, 1991 WL 95387 at *1. Judge Wood further stated that "where it appears that a plaintiff's purpose in asserting a new claim is his or her anticipation of an adverse ruling on the original claims, the court will deny leave to amend." *Id.* Finally, Judge Wood found that "the amendment would be particularly prejudicial where discovery has already been completed and defendant has already filed a motion for summary judgment." *Id.* at *2. *Bymoen* is directly on point. Here, a considerable period of time elapsed between the original complaint and the present motion to amend, and in the Court's opinion, plaintiffs' explanation of the delay is meritless. Plaintiffs did not bring this motion until discovery was closed and defendants' summary judgment motion was imminent. And because plaintiffs conceded that the motion was the result of their recognition that they were not likely to prove

their willfulness claim against defendant Greenberg, plaintiffs' purpose in seeking to amend appears to have been their anticipation of an adverse ruling on the summary judgment motion. Following *Bymoen*, plaintiffs' motion to amend should be denied.

Similarly, in *CL–Alexanders Laing & Cruickshank v. Goldfeld*, 739 F.Supp. 158 (S.D.N.Y.1990), Judge Mukasey denied leave to amend, stating:

> Where there has been excessive delay before seeking to serve the amended complaint, leave to do should be denied absent a convincing explanation for the delay. When the motion is made after discovery has been completed and a motion for summary judgment has been filed, leave to amend is particularly disfavored because of the resultant prejudice to defendant.

*Id.* at 166–67 (citations omitted). *See also*, *e.g.*, *Ansam Assoc., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) ("permitting the proposed amendment would have been especially prejudicial given the fact that discovery had already been completed and [defendant] had already filed a motion for summary judgment."); *Goss v. Revlon, Inc.*, 548 F.2d 405, 407 (2d Cir.1976) (not abuse of discretion to deny leave to amend where plaintiff advanced no reason for the delay), *cert. denied*, 434 U.S. 968, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977); *Bouzo v. Citibank, N.A.*, 1995 WL 144825 at *7–8 (leave to amend denied; the longer the period of delay, less required of non-movant to show prejudice; no reason new claims could not have been raised earlier; new claims of fraud and negligent misrepresentation would require significant additional discovery while all other discovery is essentially complete); *Gonzalez v. St. Margaret's House Housing Dev. Fund Corp.*, 613 F.Supp. 60, 62 (S.D.N.Y.1985) (leave to amend denied where additional discovery would delay trial).

I recommend that the Court deny plaintiffs' motion to further amend their complaint.

## V. PLAINTIFFS' STATE LAW BREACH OF PRIVACY CLAIMS AGAINST DEFENDANT GREENBERG SHOULD BE DISMISSED

In addition to the FCRA claim, plaintiffs' complaint asserts a state law claim for invasion of the common law right of privacy. (Cplt.¶¶ 24–27.) Because I recommend that the federal (FCRA) claim against defendant Greenberg should be dismissed with prejudice, I also recommend that the Court dismiss the state law claim against Greenberg without prejudice.

A district court may exercise pendent jurisdiction over state law claims "whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). The decision whether to exercise pendent jurisdiction, however, is within the discretion of the district court, which should consider such factors as "judicial economy, convenience, fairness and comity." *Carnegie–Mellon v. Cohill*, 484 U.S. at 349–50, 108 S.Ct. at 618–19; *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir.1993).

When the federal claims are dismissed before trial, the Supreme Court has stated that the district court ordinarily should decline the exercise of jurisdiction by dismissing the state claims without prejudice. *Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7 ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 ("if the federal claims are dismissed before trial ... the state claims should be dismissed as well.").

Thus, I recommend that, in the exercise of its discretion, the Court dismiss plaintiffs' pendent state law claim against defendant Greenberg without prejudice.

## CONCLUSION

For the reasons set forth above, I recommend that the Court: (1) grant summary

judgment to defendant Greenberg dismissing the Fair Credit Reporting Act claim; (2) deny plaintiffs' motion to amend the complaint to assert an FCRA negligence claim against Greenberg; (3) dismiss plaintiffs' pendent state law invasion of privacy claim against defendant Greenberg without prejudice; and (4) deny defendant Parco's summary judgment motion.

Pursuant to the Rule 16 Initial Pretrial Conference Order, the parties are to submit the proposed pretrial order within 30 days of the Report and Recommendation (even if any objections are filed with Judge Wood).

### *FILING OF OBJECTIONS TO THIS RE-PORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See* also Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Services,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).